77557. CITIZENS BANK OF BALL GROUND v. JOHNSON.
(381 SE2d 121)

BANKE, Presiding Judge.

This case began as an action by the appellee, Nicky Johnson, to collect from Edward Fullerton the principal and accrued interest due on an unsecured promissory note in the face amount of $70,000. Fullerton had executed the note in connection with his purchase of a Ford automobile dealership from Johnson. During discovery, Johnson uncovered evidence of what he alleged was a fraudulent conspiracy between Fullerton and the appellant bank to misrepresent the extent of Fullerton's assets. Johnson subsequently joined the appellant bank as a defendant in the action and ultimately obtained a jury verdict against it for actual and punitive damages based on the alleged fraud. The bank appeals.

Johnson began looking for a purchaser for the dealership after he was forced to close it in April of 1980 due to losses caused by high interest rates. On October 1, 1980, he gave Fullerton an option to purchase the assets of the business for $650,000. The option was originally to expire on October 16, 1980, but was extended several times. The deal finally closed on January 3, 1981.

To secure financing for the purchase, Fullerton applied for and obtained a loan guarantee from the federal Small Business Administration (SBA). He then sought funding for the loan from the appellant bank through dealings with its then vice-president, Hollis Lathem. The transfer of the dealership was contingent upon the approval of Ford Motor Credit Company (hereafter referred to as Ford), which held a security interest in its assets. By late October of 1980, Ford was prepared to give its approval, provided Fullerton could produce satisfactory evidence of his "financial qualifications." Fullerton testified that on October 29, 1980, acting with Lathem's knowledge and approval, he deposited a worthless check in the amount of $242,000 into his account with the appellant bank and exhibited the deposit slip to Ford. However, Ford requested a letter from the appellant bank confirming the existence of the deposit. On October 30, 1980, Mr. Lathem wrote such a letter, addressed "To Whom It May Concern" and stating as follows: "Edward H. Fullerton currently has on deposit $242,500 which is in the account for Buford Ford. This money was received with no pay-back restrictions and is a part of his future inheritance." Fullerton then hand delivered this letter to his contact at Ford, who, without telling Fullerton, subsequently telephoned Johnson and informed him of its contents. Subsequently, the $242,000 check was dishonored by the drawee bank and returned to the appellant bank unpaid. However, on the basis of the "To Whom It May Concern" letter, Ford had by then approved the proposed transfer of the dealership to Fullerton, enabling Fullerton to proceed with his loan application. The bank never notified Ford that the check had been dishonored.

Although Fullerton and Johnson had been led by Lathem to believe that the loan would be approved promptly, no action was taken on the application until mid-December, when the bank finally turned it down. Johnson testified that, during the interim, he contacted Lathem to ask him what the holdup was and mentioned to him that he understood Fullerton had made a "substantial deposit in [the] bank in order to induce you to make the loan." He stated that Lathem did not disclose to him at this time that the $242,000 check had been dishonored but assured him that the only problem was in "getting the board of directors all together at one time [to] approve the loan." Upon being informed later that the loan application had been denied, Johnson spoke with Lathem again and "asked him why the loan was turned down when Mr. Fullerton had the size deposit that he had in the bank." He stated that Lathem continued to conceal from him the fact that the check had been dishonored, assuring him that the loan was "bankable" and that the only reason it had been turned down was because Ford had declined to provide an expected guarantee of the obligation.

During the two weeks after the appellant bank turned down the loan, Fullerton, accompanied by Johnson, visited at least five other banks in an effort to secure financing for the transaction, before finally finding one which was willing to loan Fullerton the money. It is undisputed that while this search for financing was in progress, Johnson asked Fullerton to make a $5,000 earnest money deposit on the deal and that Fullerton refused the request on the ground that he did not have the funds. When asked on cross-examination why he had not confronted Fullerton about the apparent inconsistency between this response and the information contained in the "To Whom It May Concern" letter, Johnson indicated that he had not wished to reveal to Fullerton that he knew about the letter. Johnson conceded that he neither asked Fullerton for a financial statement prior to the closing nor asked to see any of the financial statements which Fullerton had submitted to the SBA and to the various banks to which he had applied for financing.

Fullerton did not deny owing Johnson the balance due on the note, which, with accrued interest, was shown to be $162,303.03. At the close of the evidence, the trial court accordingly directed a verdict against him on that claim. In response to a written verdict form prepared by Johnson's counsel and submitted to them by the trial court, the jury subsequently made the following determinations: (1) That Fullerton was liable to Johnson for fraud as well as for breach of contract, (2) that the appellant bank was also liable to Johnson for fraud, (3) that Johnson had suffered actual damages in the amount of $162,303.03, (4) that Fullerton was liable to Johnson for punitive damages in the amount of $25,000, and (5) that the bank was liable to Johnson for punitive damages in the amount of $335,000. Unbeknownst to the jury, however, Johnson had entered into a settlement agreement with Fullerton prior to trial whereby, in return for Fullerton's promise not to seek bankruptcy relief, Johnson had agreed not to require him to pay more than $10,000 in satisfaction of any judgment which might ultimately be entered against him in the case. *Held*:

1. The appellant bank contends that, given the events which had ensued during the two-month period between the issuance of the "To Whom It May Concern" letter and the closing, Johnson was not reasonably justified in relying on that letter as his sole gauge of Fullerton's financial resources. We agree. By the time the deal between Johnson and Fullerton was closed, Johnson had ample reason to question Fullerton's financial strength, inasmuch as several banks, including the appellant, had turned down his loan request, notwithstanding the evident willingness of the SBA to guarantee at least a portion of the obligation. In addition, Fullerton had responded to Johnson's request for a $5,000 earnest money deposit by telling him that he did

not have sufficient funds to make such a deposit. Clearly, these circumstances should have alerted any reasonable businessman of the need either to verify the continued existence of the $242,000 cash deposit or to make some other form of inquiry into Fullerton's financial condition, *yet Johnson never even asked Fullerton for a financial statement*, preferring instead to place complete faith in the contents of a two-month-old letter which he did not want to admit to having seen and which provided no indication whatever of Fullerton's liabilities or net worth.

"While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law." *Hill v. Century 21 &c. Realty*, 187 Ga. App. 754, 756 (371 SE2d 217) (1988). Under the undisputed circumstances of this case, we hold that Johnson's failure to take any steps whatever to investigate Fullerton's creditworthiness constituted a lack of due diligence on his part, rendering his alleged reliance on the "To Whom It May Concern" letter unreasonable as a matter of law. Accord *Crawford v. Williams*, 258 Ga. 806 (375 SE2d 223) (1989); *B & W Pipeline v. Newton County Bank*, 181 Ga. App. 684 (353 SE2d 829) (1987); *Foremost Ins. Co. v. Southeast Recovery*, 175 Ga. App. 794 (3) (334 SE2d 375) (1985). Accordingly, we hold that the trial court erred in denying the bank's motion for directed verdict.

2. The appellant was also entitled to a directed verdict based on Johnson's failure to present any evidence from which the jury could have calculated the amount of damages Johnson had suffered as a result of the alleged fraud. The measure of recovery in an action for fraud is the actual loss proximately caused by the misrepresentation. See generally *Windsor Forest v. Rocker*, 115 Ga. App. 317, 322 (2) (154 SE2d 627) (1967); *Brown v. Ragsdale Motor Co.*, 65 Ga. App. 727 (3) (16 SE2d 176) (1941). The actual damages which the jury assessed against the bank on the fraud claim consisted of the full amount of the principal and interest owed by Fullerton on the promissory note. However, it is evident that Johnson was damaged by the alleged fraud only to the extent that Johnson could not collect this indebtedness from Fullerton himself by levying against his remaining assets. The jury was offered no evidence whatever on this issue, nor was it otherwise offered any evidence from which it could have determined the assignment or market value of the note. Consequently, the jury was not presented with evidence from which it could have ascertained the monetary damages actually sustained by Johnson as a result of Lathem's misconduct.

3. In light of the foregoing, we find it unnecessary to address the appellant's remaining enumerations of error.

*Judgment reversed. Carley, C. J., McMurray, P. J., Sognier and Benham, JJ., concur. Deen, P. J., Birdsong and Beasley, JJ., dis-*

*sent. Pope, J., disqualified.*

BIRDSONG, Judge, dissenting.

The holding of the majority, albeit inadvertent, gives financial institutions virtually a "blank check" to conspire to defraud innocent third parties who are engaged in business transactions with the bank's friends and favored customers. I cannot join in this result.

I find the precedent relied upon in Division 1 of the majority's opinion to be clearly distinguishable factually from the case sub judice. Therefore, while the legal principles espoused in those cases are not in question, the applicability of that body of law to the issues at hand is in great dispute.

It is well-established that "[q]uestions of fraud, the truth and materiality of representations made by a defendant, and whether the plaintiff could have protected himself by the exercise of proper diligence are, except in plain and indisputable cases, questions for the jury." *Brown v. Techdata Corp.*, 238 Ga. 622, 625 (234 SE2d 787) and the seven cases therein cited. Moreover, " '[w]hile a party must exercise reasonable diligence to protect himself against the fraud of another, he is not bound to exhaust all means at his command to ascertain the truth before relying upon the representations. Ordinarily the question whether the complaining party could ascertain the falsity of the representations by proper diligence is for determination by the jury.' " *Braselton Bros. v. Better Maid &c.*, 222 Ga. 472, 474 (150 SE2d 620). While under very limited circumstances the question of lack of due diligence may be decided as a matter of law, this decision is appropriate only when "the facts of [the case sub judice] demonstrate a *complete lack of any effort*" by the concerned party to protect himself from the fraud. *Crawford v. Williams*, 258 Ga. 806, 807 (375 SE2d 223). Any lesser standard results in appellate courts deciding issues of lack of due diligence by weighing the evidence or judging witness credibility. This we cannot do. *Davis v. Carter*, 100 Ga. App. 831 (2) (112 SE2d 319); see *Parr v. Pinson*, 182 Ga. App. 707 (356 SE2d 740). While Johnson may not have taken the steps which the majority believes he should have taken to protect himself against fraud, the evidence clearly shows that he took some steps. Here the jury, after having received proper instructions, rendered its verdict. On appeal, we must construe the evidence most strongly to support the jury's verdict and the judgment. *Williams v. Perry*, 187 Ga. App. 586 (1) (370 SE2d 836); *McLarty v. Kushner*, 173 Ga. App. 432 (1) (326 SE2d 777). Further, *every presumption and inference must be in favor of the verdict. Worn v. Sea-Cold Svcs.*, 135 Ga. App. 256 (3) (217 SE2d 425). Not only does the majority not follow these time-honored principles of appellate review, they have weighed the evidence under the cloak of adjudicating the sufficiency thereof. This

marked invasion of the province of the jury should not be allowed to stand.

I further disagree with the majority's conclusion that the appellant is entitled to a directed verdict based on Johnson's failure to present any evidence from which the jury could have calculated the amount of damages he had suffered as a result of the fraud. OCGA § 9-12-4 provides that "[v]erdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." No such necessity exists in this case. Verdicts will be construed in favor of legality. See *Gough v. Gough*, 238 Ga. 695 (235 SE2d 9); *Herman v. Boyer*, 154 Ga. App. 617 (269 SE2d 107). It may be *presumed* that, although the amount of the defaulted note plus interest was the amount the *jury* found to be the only "actual" damages incurred by Johnson, this damage was found by them to be caused directly or in part by the defendants' fraud in misleading Johnson into giving the note. Therefore, the sum may be collected on either account: on account of Fullerton's contract (note) default, or on account of the bank's and Fullerton's fraud. What cannot be collected upon one account may be collected upon the other, until the actual damages of $162,303.03 are satisfied. Moreover, such a verdict would be completely consistent, even though rendered in one amount upon two counts or causes of action. See *Paulk v. South Ga. Bldg. &c. Co.*, 152 Ga. 646 (111 SE 26); *Rowland v. Gardner*, 79 Ga. App. 153 (53 SE2d 198). I believe no other reasonable conclusion can be reached in this instance. It would have been difficult for the jury to find the bank (or Fullerton) liable in connection with this note unless there had been an actual default or breach thereof, together with the consistent damages. It may be *presumed, Worn v. Sea-Cold*, supra, that the jury's obvious intendment was to assess the actual damages at the amount of the note plus interest, and to ascribe the cause of these damages to fraud as well as breach of contract. Accordingly, the actual damages may be entirely collected jointly and severally from the bank and Fullerton for fraud, or from Fullerton for breach of contract (default). This is not only reasonable, but it results in a non-contradictory construction to be made, *during the appellate process*, of this single award upon two causes; most importantly, consistent with the appellate principles above cited, it allows this verdict and judgment to stand. See *Jackson v. Houston*, 200 Ga. 399 (37 SE2d 399).

The majority asserts that "Johnson was damaged by the . . . fraud only to the extent that Johnson could not collect this indebtedness from Fullerton himself by levying against his remaining assets," and that "[t]he jury was offered no evidence whatever on this issue, nor was it otherwise offered any evidence from which it could have determined the assignment or market value of the note." Assuming arguendo that Johnson was damaged only to the extent asserted

above, I believe that the jury could *infer* from the evidence before it, that Johnson could not collect anything either from Fullerton or his assets. For example, the jury could infer that a man who deposited a worthless check in the amount of $242,000 into his account, who conspired with a bank official concerning the transaction, who did not have the funds to make a $5,000 earnest money deposit, and who ultimately could not get a loan, was a man from whom Johnson could collect nothing. Thus, unlike my esteemed colleagues of the majority, I would apply the sound legal principles of appellate review and affirm this judgment.

I respectfully dissent. I am authorized to state that Presiding Judge Deen and Judge Beasley join in this dissent.

DECIDED MARCH 17, 1989 —
REHEARING DENIED MARCH 30, 1989 —

*Stewart, Melvin & House, J. Douglas Stewart, Frank W. Armstrong III*, for appellant.
*Fletcher W. Griffin III*, for appellee.