A91A2191, A91A2192. TRUST COMPANY BANK OF MIDDLE GEORGIA, N. A. v. STUBBS; and vice versa.
A91A2193, A91A2194. TRUST COMPANY BANK OF MIDDLE GEORGIA, N. A. v. JONES; and vice versa.

(417 SE2d 373)

POPE, Judge.

These four cases arise from a dispute between plaintiffs Doctors Wytch Stubbs and G. R. Jones and defendant Trust Company Bank of Middle Georgia, N. A. (the "bank") concerning the use of two certificates of deposit ("CDs") held by the doctors' pension plans which were pledged as collateral for certain debts of Macon Auto Auction, Inc. ("Macon Auto"). The doctors contend their agreement with the bank allowed the CDs to be used only as collateral for a line of credit. The evidence is undisputed that the bank advanced a loan to Macon Auto collateralized by the doctors' CDs.

Macon Auto was an automobile auction company which operated by purchasing automobiles from sellers through the use of drafts. Macon Auto would then sell the vehicles at auctions. Buyers would purchase vehicles also using a draft. The use of drafts insured that no money exchanged hands until proper title and documentation on the vehicle was transmitted between the parties to the transaction.

Acting through its president Ken Brown, Macon Auto opened a checking account at the bank. Marvin Snow was the bank officer in charge of the Macon Auto account. Although the bank initially agreed to given Macon Auto immediate credit for its drafts, the credit given Macon Auto's drafts soon exceeded collected funds by at least $100,000. Snow informed Brown that the bank could no longer give Macon Auto immediate credit for its drafts unless sufficient liquid assets were deposited with the bank to cover the "gap" or "interim"

deficiencies created during the period when the outstanding drafts payable to Macon Auto were uncollected. Brown did not have any liquid assets available to deposit with the bank.

At approximately the same time the bank refused to allow immediate credit for Macon Auto's drafts, one of Dr. Jones' patients who was an auctioneer for Macon Auto, approached Dr. Jones about an investment opportunity with Macon Auto. Dr. Jones, in turn, discussed the investment opportunity with his friend Dr. Stubbs. Brown met with Drs. Stubbs and Jones to discuss an arrangement in which the doctors would deposit collateral with the bank to cover certain debts of Macon Auto and in exchange be paid certain fees for the use of their funds. After this meeting in August 1985, Drs. Stubbs and Jones entered into separate agreements with Macon Auto in which it was agreed: (1) the doctors would deposit with the bank CDs "to be used as collateral for a line of credit for Macon Auto"; (2) the doctors would be paid certain fees for the use of their certificates as collateral; (3) Macon Auto would keep accurate records of all transactions which would be available to Drs. Jones and Stubbs; and (4) Drs. Jones and Stubbs would be listed as co-loss payees on an insurance policy maintained by Macon Auto. These agreements did not specify how the line of credit the doctors were collateralizing would operate.

Drs. Jones and Stubbs also engaged in written correspondence and at least one telephone conversation with the bank officer concerning the CDs prior to the time the CDs were deposited with the bank for Macon Auto's benefit. In a telephone conversation between Drs. Jones and Snow, Snow allegedly represented to Dr. Jones the certificates would be used as collateral for a type of "gap" financing needed by Macon Auto due to its use of drafts, and Snow favorably recommended both Brown and Macon Auto.

By letter dated August 30, 1985, Dr. Stubbs sent the bank a certificate of deposit in the amount of $50,000 "to serve as collateral for Macon Auto . . . ." On September 4, 1985, Drs. Stubbs and Jones each signed an Owners Consent to Pledge of Collateral in which they agreed inter alia to pledge their CDs "for, any and all indebtedness, obligations or liabilities of every kind and nature" of Macon Auto. The bank's attorney wrote to Jones on September 6, 1985 stating it was the bank's understanding that the doctors' pension plans wished to assign certain CDs with the bank to "secure the payment of debts of Macon Auto Auction." The letter was consented to by both doctors as evidenced by their signatures on the bottom of the letter. On September 19, 1985, Dr. Jones transmitted to Snow the documentation requested by the bank for his certificate of deposit, including the certificate in the amount of $100,000, "to collateralize a line of credit for Mr. Ken Brown of the Macon Auto Auction, Inc. . . . ." On September 26, 1985, the doctors entered into security agreements with the

bank in which they agreed to sell, assign and transfer to the bank the CDs "to secure all existing and future indebtedness" of Macon Auto.

On September 26, 1985, after the CDs had been deposited, the bank made a loan in the amount of $150,000 to Macon Auto. On that same day, Snow mailed to Drs. Jones and Stubbs a transmittal letter which stated: "Enclosed you will find copies of the various documents pertaining to a loan of $150,000 made to Macon Auto Auction, Inc. dated September 26, 1985 on which your plans collateral was used." Snow, however, did not include a copy of Macon Auto's note with the documents.

Things did not go well at Macon Auto and approximately one year after Macon Auto received the loan proceeds, it defaulted on the loan and declared bankruptcy. The bank cashed the CDs and applied the proceeds to Macon Auto's default. Jones and Stubbs brought separate suits against the bank seeking to recover their funds. In their first amended complaints, Drs. Jones and Stubbs set forth five claims against the bank: (1) fraud; (2) constructive fraud; (3) breach of good faith; (4) attorney fees; and (5) punitive damages. Plaintiffs also filed second amended complaints adding Count VI for breach of contract, and Count VII in which they asserted if their respective agreements with the bank were not breached, valid contracts between the parties were never formed.

The bank moved for summary judgment in both cases. The trial court granted the bank's motion for summary judgment as to the first five counts contained in the first amended complaints. With regard to the claims contained in the second amended complaints, the trial court found that although an issue of fact existed as to whether a valid contract was ever entered into between the doctors and the bank, that fact was not material because if a valid contract had been formed, the bank breached it as a matter of law by failing to abide by its agreement to provide a limited line of credit to Macon Auto. If a valid contract had not been formed, then, as a matter of law, the bank had no right to maintain possession of or liquidate the CDs. In accordance with that finding, the trial court entered judgment against the bank in favor of the plaintiffs for the original amount of the CDs plus interest.

All parties appeal from the judgment. In Case No. A91A2191, the bank appeals the trial court's judgment in favor of Stubbs on Counts VI and VII. In Case No. A91A2192, Stubbs cross-appeals against the bank as to the first five counts. The bank appeals the trial court's judgment in favor of Jones on Counts VI and VII in Case No. A91A2193. Jones cross-appeals against the bank concerning the first five counts in Case No. A91A2194.

## Case Nos. A91A2192 and A91A2194

Cases A91A2192 and A91A2194 are virtually identical and will be analyzed together.

1. Plaintiffs argue the trial court erred in granting the bank summary judgment on their fraud claims because issues of material fact remain for determination by a jury. "In order to prevail on a motion for summary judgment (OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. . . . The burden of proof is shifted when the moving party makes a *prima facie* showing that it is entitled to judgment as a matter of law. At that time the opposing party must come forward with rebuttal evidence or suffer judgment against him." (Citations and punctuation omitted.) *Collier v. Evans*, 199 Ga. App. 763, 766 (5) (406 SE2d 90) (1991). The trial court correctly concluded plaintiffs failed to meet their burden of rebutting defendant's prima facie showing that plaintiff's fraud claims must fail.

To establish a claim for fraud and deceit in Georgia, a plaintiff must show: "(1) false representation made by the defendant; (2) scienter; (3) an [in]tention to induce the plaintiff to act or refrain from acting in reliance by the plaintiff; (4) justifiable reliance by the plaintiff; and (5) damage[s]." (Citations and punctuation omitted.) *Webb v. Rushing*, 194 Ga. App. 732, 734 (3) (391 SE2d 709) (1990).

The bases of plaintiffs' fraud claims are: (1) Snow misrepresented the manner in which the bank would use the CDs, i.e, using them to collateralize a loan rather than a line of credit for Macon Auto; (2) Snow endorsed this investment opportunity to plaintiffs in telephone conversations even though he knew about Macon Auto's financial difficulties; and, (3) Snow purposefully failed to send plaintiffs a copy of the note evidencing Macon Auto's loan when he sent the doctors copies of the other loan documents. Pretermitting the question of whether plaintiffs submitted sufficient evidence to establish the other elements of fraud, a review of the records reveals plaintiffs cannot establish that they justifiably relied upon any of the representations set forth above. " 'While questions of due diligence often must be resolved by the trier of fact, that is not always the case. One may fail to exercise due diligence as a matter of law.' [Cit.]" *Citizens Bank of Ball Ground v. Johnson*, 191 Ga. App. 155, 158 (1) (381 SE2d 121) (1989).

With regard to plaintiffs' claim that the bank fraudulently extended a loan to Macon Auto rather than advancing a line of credit, the records contain Snow's letters to plaintiffs written immediately after the bank loaned $150,000 to Macon Auto, which reference the

loan. Although Dr. Stubbs denies receipt of his letter, Dr. Jones, who plaintiffs acknowledge acted on behalf of both doctors in the early stages of this investment, acknowledges receipt and review of his letter. Thus, plaintiffs cannot complain that the bank failed to disclose to them that a loan was made to Macon Auto. Because both doctors testified that they understood the difference between a line of credit and a standard loan, the use of the word "loan" in Snow's letter should have alerted them that their funds were being used to collateralize a different type of credit transaction than they intended.

With regard to plaintiffs' claim that Snow's failure to send them a copy of Macon Auto's note constituted fraud, Snow testified that he did not send a copy of the note to plaintiffs because they were not parties to that document. Snow only sent plaintiffs copies of the documentation concerning their agreement to collateralize the loan. Moreover, Dr. Jones testified that after he did not receive a copy of the "loan document," he orally requested a copy of the note from Snow on at least two occasions, but Snow did not send it to him. Pretermitting the questions of whether confidentiality or the lack of a confidential or fiduciary relationship would have negated any duty of the bank to disclose the note to plaintiffs, if plaintiffs believed that a review of that document was important, they could have easily received a copy of the note from Brown, who had agreed to make Macon Auto's financial records available to plaintiffs. Dr. Jones acknowledges he never requested a copy of the note from anyone at Macon Auto. Dr. Stubbs made no attempt to procure the document from either the bank or Macon Auto. Plaintiffs may not now complain of fraud when the document they contend was concealed from them could easily have been obtained through the exercise of ordinary diligence and prudence.

With regard to plaintiffs' claim they were misled because Snow endorsed the venture they were considering, we hold this claim is governed by our decisions in *Citizens Bank of Ball Ground v. Johnson*, supra, and *Scott v. Fulton Nat. Bank*, 92 Ga. App. 741 (89 SE2d 892) (1955). In *Johnson*, rather than conducting an independent investigation, the plaintiff simply relied upon a letter issued by the defendant bank to gauge the financial resources of the person to whom he sought to sell his car dealership. We held that the plaintiff failed to exercise due diligence as a matter of law. *Johnson*, supra at (1). In *Scott*, the plaintiff, following the advice of a banker, decided to invest $10,000 in a company which went bankrupt shortly thereafter. We held "[s]o far as the petition discloses this information was given gratuitously and no relationship existed which would entitle the plaintiff to rely upon the representations made by the defendant's agent; therefore the plaintiff was under the duty to prosecute his own inquiries in order to ascertain the true financial condition of [the com-

pany]." *Scott*, supra at 744.

In this case, plaintiffs only attempt to investigate the investment opportunity before they pledged their CDs was to request and examine Brown's personal financial statements. Plaintiffs did not request or receive any information about Macon Auto, the corporation with which they contracted. Even after they pledged their certificates, plaintiffs made no attempt to monitor the activities of Macon Auto, even though Macon Auto agreed to make its financial records available to plaintiffs in the agreements entered into by the parties. The plaintiffs were introduced to Brown through a patient of Dr. Jones. The evidence reveals that no one associated with the bank discussed Macon Auto with the plaintiffs until after either Brown or the doctors told the bank the doctors were willing to pledge their CDs for Macon Auto's benefit. The plaintiffs had no prior experience or banking relationship with the bank and neither of them sought financial advice or direction from the bank. Thus, there was no reason for the plaintiffs to rely on Snow's gratuitous recommendation of Brown or Macon Auto. The trial court correctly directed a verdict for the bank on plaintiffs' fraud claims.

2. In Count II of their complaints, plaintiffs allege that because the bank failed to disclose certain information to the doctors concerning the financial difficulties of Brown and the businesses in which he was involved, the bank is guilty of constructive fraud. "Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another." OCGA § 23-2-51. It is undisputed, as discussed above, that plaintiffs made no inquiries to the bank about Brown or any of his businesses, including Macon Auto. Plaintiffs do not cite to any cases in this state in which a legal or equitable duty has been recognized under similar circumstances, nor are we aware of any. Cf. *Big Bend Agri-Svcs. v. Bank of Meigs*, 174 Ga. App. 493 (1) (330 SE2d 422) (1985); *Curtis v. First Nat. Bank*, 158 Ga. App. 379 (1) (280 SE2d 404) (1981); *Limoli v. First Ga. Bank*, 147 Ga. App. 755, 758 (250 SE2d 155) (1978). The bank had no duty to make gratuitous revelations to plaintiffs concerning Brown or any of his businesses. This enumeration of error is without merit.

3. Plaintiffs next argue the trial court erred by refusing to find the bank breached its duty of good faith in obtaining their pledges of the CDs. " 'Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.' [Cits.]" *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980). Plaintiffs make no allegations that the bank did not act in good faith in the performance and enforcement of terms contained in the pledges of the plaintiffs' CDs, rather plaintiffs' bases for this claim are the same

as for their fraud claims. For the reasons set forth in Divisions 1 and 2, supra, this enumeration must fail.

4. Plaintiffs next contend the trial court erroneously granted the bank summary judgment on their claims for attorney fees pursuant to OCGA § 13-6-11. That statute provides "[t]he expenses of litigation generally shall not be allowed as a part of the damages; but where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith in making the contract, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow them." As discussed, supra, the trial court correctly concluded the bank is entitled to judgment as a matter of law on the fraud claims filed by plaintiffs. There are no other allegations which would justify the imposition of attorney fees in this case. The trial court properly granted the bank summary judgment on this claim.

5. Plaintiffs assert the trial court erred in granting the bank summary judgment on their claims for punitive damages pursuant to OCGA § 51-12-5. Plaintiffs concede, however, that punitive damages may not be awarded in pure contractual cases, and their punitive damages claims must fail if we affirm the trial court's grant of summary judgment to the bank on the claims for fraud, constructive fraud, and breach of good faith. Because we have affirmed the trial court's ruling on the claims, this enumeration of error is without merit.

### Case Nos. A91A2191 and A91A2193

In Case No. A91A2191, the bank appeals the trial court's judgment to Stubbs on Counts VI and VII of the second amended complaint. In Case No. A91A2193, the bank appeals the trial court's grant of judgment to Jones on the same claims. The trial court held that Jones' transmittal letter dated September 19, 1985, in which he referred to "collateraliz[ing] a line of credit" for Macon Auto constituted a counteroffer from both doctors. Although the court stated there remained an issue of fact concerning whether the bank accepted the terms of the counteroffer, it found that was not a material fact because if the counteroffer had not been accepted, there existed no agreement between the parties. If the counteroffer had been accepted the bank breached its agreement with plaintiffs by failing to provide a limited line of credit to Macon Auto. We do not agree and hold that the bank is entitled to judgment on Counts VI and VII of plaintiffs' second amended complaints as a matter of law.

On September 4, 1985, both plaintiffs signed an agreement with the bank titled "Owners Consent to Pledge of Collateral." This document set forth the understanding of the parties concerning the man-

ner in which the CDs pledged by the plaintiffs could be used for Macon Auto's benefit. Specifically, plaintiffs agreed "that said collateral shall secure and that a security interest in said collateral shall exist and will continue to exist in Bank's favor as security for, *any and all indebtedness, obligations or liabilities of every kind and nature of [Macon Auto] . . . howsoever evidenced, whether now existing or hereafter arising . . . .*" (Emphasis supplied.) Clearly, this language encompasses the loan extended by the bank to Macon Auto. We hold that this document evidences a complete, unambiguous agreement between plaintiffs and the bank. "There are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby. [Cits.] This rule has particular force when the party is well educated and laboring under no disabilities." *Berman v. Rubin,* 138 Ga. App. 849, 854 (227 SE2d 802) (1976). Plaintiffs acknowledge they either read or had full opportunity to read the terms and conditions contained in the document. Plaintiffs are well educated and do not claim they did not understand the language contained in the pledge of collateral.

Furthermore, the parol evidence rule, which prohibits the admission of parol contemporaneous evidence to vary or contradict the terms of a valid written instrument, forbids consideration of Dr. Jones' letter dated September 19, 1985, transmitting inter alia the Owners Consent to Pledge of Collateral. "[P]arol evidence is neither admissible nor probative if the agreement is otherwise clear and unambiguous. [Cit.]" *Dennisson v. Lakeway Publishers,* 196 Ga. App. 85, 86 (2) (395 SE2d 366) (1990); *Upshaw v. Southern Wholesale Flooring Co.,* 197 Ga. App. 511, 513 (2) (398 SE2d 749) (1990). The agreement of the parties contained in the Owners Consent to Pledge of Collateral is unambiguous and there was no reason to go outside that document to ascertain the agreement between the parties. For these reasons, the trial court should have granted summary judgment to the bank on these claims.

*Judgments affirmed in Case Nos. A91A2192 and A91A2194. Judgments reversed in Case Nos. A91A2191 and A91A2193. Sognier, C. J., and Cooper, J., concur. Birdsong, P. J., disqualified.*

DECIDED MARCH 10, 1992 —
RECONSIDERATIONS DENIED MARCH 25, 1992 —

*Jones, Cork & Miller, Hubert C. Lovein, Jr., Howard J. Strickland, Jr.,* for appellant.

*Arnall, Golden & Gregory, Jerome L. Kaplan, Ronald C. Thomason, Henry Angel,* for appellees.