**HARI & ASSOCIATES, et al.,**

v.

**RNBC, INC., et al.**

No. 2:95–0077.

United States District Court, M.D. Tennessee, Northeastern Division.

Nov. 20, 1996.

532

Joseph F. Edwards, O'Mara, Johnson, Edwards & Edwards, P.L.L.C., Cookeville, TN, for Hari & Associates and Vasant G. Hari.

RNBC, Inc., Jonesboro, GA, Pro Se.

Ramsey Barthell Leathers, Jr., Blackburn, Slobey, Freeman & Happell, Nashville, TN, for Brenda Baggett and James P. Baggett and Brenda Baggett and James P. Baggett, Jonesboro, GA, Pro Se.

Gerald A. Smith, Jr., Little & Smith, Nashville, TN, for Tucker Federal Savings & Loan Association.

### MEMORANDUM

WISEMAN, Senior District Judge.

Before the Court is a motion for summary judgment in favor of Tucker Federal Savings & Loan (Tucker), a defendant, in the present diversity action that arose from the construction of a Hampton Inn motel in Cookeville, TN by Hari, the plaintiff. Although Hari has maintained several causes of action against several defendants, only the causes of action relating to Tucker Savings & Loan are at issue in the present motion. Specifically, Hari maintains that Tucker is liable for fraud, negligent misrepresentation, and breach of trust for its activities in relation to the surety, Capital Assurance Company of Baton Rouge, Louisiana. For the reasons that follow, Tucker's motion for summary judgment on all three claims is GRANTED.

## I. FACTS

### A. The Early Days of the Hampton Inn— Cookeville Project

Mr. Hari and his family have been associated with the motel industry for roughly two decades. In this time, Hari has served as a

manager, owner, and developer of various motels in Tennessee and Kentucky. The present suit stems from Hari's plan to build and develop a Hampton Inn motel in Cookeville, Tennessee, a plan that originated in 1991.

With the help of Victoria Denson of Weinberg & Associates, an Atlanta based financial broker, Hari was able to obtain commitments for both permanent financing and a construction loan. The permanent financing was arranged with Citizens State Bank of Liberal, Kansas (Citizens), and was to be guaranteed by the Small Business Association (SBA). Because of the SBA guarantee and the agreement with Citizens, Hari was obliged to provide evidence that his contractor had obtained "a 100% performance and labor and material payment bond executed by a corporate surety approved by the Treasury Department." Hari Dep. Ex. 2 ¶ 5(B)(3).

Hari's construction loan was obtained from Tucker, and was to be governed by the laws of Georgia. Pursuant to the SBA requirements, as part of their agreement, Hari was to provide evidence of "a contractor labor/material payment bond issued by a corporate surety approved by Lender in its sole discretion." Hari Dep. Ex. 5 ¶ E(6). Hari acknowledged that he had an obligation both to the SBA and to Tucker to provide evidence of a surety. Hari Dep. p. 25, line 18, p. 26, line 20.

After the architectural plans for the motel were completed, Hari selected RNBC to serve as the general contractor for this project. Although Hari admitted that the surety bond requirements were not discussed in his initial discussions with RNBC, Hari informed RNBC that "the bank is requiring [a surety bond] and [RNBC is] to provide payment and performance bonds to [Tucker's] satisfaction." Hari Dep. p. 49, line 15–18. Hari did not mention the SBA's requirement that the surety must meet with the Treasury Department's approval. Nor did he check upon the identity and strength of the surety or verify that the surety met the SBA's requirement. Hari Dep. p. 50–1.

Prior to the close of the construction loan, Hari learned that RNBC was having financial difficulties and may have been on the verge of bankruptcy. In response to this disturbing news, Hari asked his attorney, Bateman, to check on the situation. Through Bateman, Hari was assured that RNBC would complete the project. Hari Dep. p. 74–6. Although Hari did not investigate the bonds after learning of the difficulty, he testified that he was relying upon the bonds being to Tucker's satisfaction. Hari Dep. p. 76.

### B. Closing the Hari—Tucker Loan Agreement

On November 2, 1992, Hari and Tucker closed their construction financing agreement. This closing went forward after RNBC provided Performance Bond No. PP92–RM–1085 and Labor and Material and Payment Bond No. PP92–RM–1085. As part of the closing, Hari delivered his equity contribution of $247,676.30 to the bank for the Cookeville project. Part of these funds were disbursed to RNBC to pay the costs associated with the bonds.

Under the Loan Agreement dated November 2, 1992, Hari agreed to commence construction of the motel within ten days and agreed that, upon completion, the premises were to be "without liens, claims, or assessments ... for any material, labor or other items furnished." Hari Dep. Exhibit 16, Article III, ¶ 5. Disbursements of the loan amount could be made to the borrower, Hari, or, at the discretion of Tucker, to the general contractor if the proceeds were being paid as part of the construction costs of the motel. Hari Dep. Exhibit 16, Article IV, ¶ 8(a). Furthermore, the contract provides that

[a]ll conditions of the obligation of [Tucker] ... are imposed solely and exclusively for the benefit of [Tucker] and its successors and assigns and no other person shall have standing to require satisfaction of such conditions in accordance with their terms or be entitled to assume that lender will refuse to make advances in the absence of strict compliance with any or all thereof and no other person shall, under any circumstances, be deemed to be a beneficiary of such conditions.

Hari Dep. Exhibit 16, Article VII, ¶ 1. Finally, the relationship between Hari and

Tucker was "that of creditor and debtor and is not intended to be and shall not in any way be construed to be that of a partnership, a joint venture or that of principal and agent." Hari Dep. Exhibit 16, Article VII, ¶ 6. With an agreement in place, construction was begun on the Hampton Inn motel in Cookeville, Tennessee.

### C. The Events Surrounding the Completion and Final Disbursement of Funds

Over the course of construction, a dispute arose between Hari and RNBC because Hari was forced to hire several subcontractors, paying for them with his own funds. RNBC submitted the bills for these subcontractors to Tucker for payment, but RNBC retained the payments without forwarding them to Hari. Tucker had not been informed that Hari had, in fact, paid for the work.

On October 1, 1993, RNBC requested a final payment of $124,343. Along with its request, RNBC submitted a Lien Waiver in which it stated, under oath, the premises could not "be made subject to any·valid lien or claim by anyone who furnished materials, supplies, labor, or services to [RNBC] for use in the above named project." Hari Dep. Exhibit 28, p. 493. Even with these assurances, Tucker hesitated in issuing the payment until it received the approval of Hari. Hari maintains that he knew this sworn statement was false and that he informed Tucker of this.

Hari and RNBC met to discuss the distribution of the final payment. They agreed that Hari would receive $52,495 and RNBC would receive $82,538. Before payment was made, RNBC executed a final lien waiver that stated, among other things, that all subcontractors had been paid or would be paid within ten days. But, Hari was still concerned.

On November 5, 1993, a conference call was held between Hari, Bateman, and Silverman, a loan officer at Tucker. Silverman informed Hari that RNBC would not be able to pay the ·subcontractors unless the final payment was released. During the discussion, Silverman offered his opinion that RNBC would use the money to · pay the subcontractors and that Tucker was comfort-able with the final lien waiver and surety bond. Therefore, Tucker was willing to make the final distribution. Hari agreed, and the distribution was made. Under that distribution, the checks were made jointly payable to Hari and RNBC as Hari had requested.

Later, Hari learned that some of the subcontractors had not been paid. Although there is some question, Hari maintains that he tried to contact the surety but learned that the surety did not exist. Hari then turned to Tucker to solve the problem. Tucker attempted to contact the surety because of its desire to insure payment on the construction loan from the permanent financing. These efforts failed. Hari was forced to pay in excess of $50,000 to remove the liens filed by the unpaid subcontractors.

As a result of the events just described, Hari instituted the present suit in 1995.

## II. DISCUSSION

In the present motion, Tucker maintains that it is entitled to a summary judgment on the fraud, negligent misrepresentation, and breach of trust causes of action asserted by Hari. Hari's response to Tucker's motion did not address the legal issues raised by Tucker. Instead, Hari argued that Tucker's motion was based upon inapplicable law.

Because the present motion is one for summary judgment, the familiar standards of Fed.R.Civ.P. 56 apply. This is true even though the present case is before the Court under its diversity jurisdiction. *Gafford v. GE,* 997 F.2d 150, 165–66 (6th Cir.1993). A moving party is entitled to a summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this rule, all evidence, facts, and the inferences to be drawn from those facts are construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Corp.,* 475 U.S. 574, 587, 106 S.Ct. · 1348, 1356, 89 L.Ed.2d 538 (1986). For the plaintiff to

withstand the defendant's motion, "there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Id.* To determine whether summary judgment is appropriate in this case, the Court looks to the state substantive law. *See Berlin v. Michigan Bell Tel. Co.,* 858 F.2d 1154, 1162 (6th Cir.1988).

### A. Tennessee Choice of Laws Rules

■ Under the Erie Doctrine, the Court must apply the choice of laws rules of the forum state, Tennessee. *Glennon v. Dean Witter Reynolds, Inc.,* 83 F.3d 132, 136 (6th Cir.1996). Tucker maintains that the Tennessee choice of laws rules require the application of Georgia law to the current tort actions because Georgia has the most significant contact to these causes of action. Hari argues that Tennessee law should govern because Hari's losses occurred in Tennessee.

■ Up until 1992, Tennessee followed the *lex loci delictus* doctrine to determine what law governed in a tort action. *Trahan v. E.R. Squibb & Sons, Inc.,* 567 F.Supp. 505, 507 (M.D.Tenn.1983). Under this approach, the law of the state where the tort occurred would govern. *Id.* When the act and the injury occurred in different jurisdictions, however, the applicable law is that of the state where the loss occurred. *Id.* "Thus, [under this approach,] in a fraud case, the place of the wrong is where the loss is sustained, not where the fraudulent representations were made." *Mackey v. Judy's Foods, Inc.,* 654 F.Supp. 1465, 1469 (M.D.Tenn. 1987), *aff'd,* 867 F.2d 325 (6th Cir.1989).

■ The Tennessee Supreme Court reconsidered its choice of laws rules in *Hataway v. McKinley,* and expressly rejected the old *lex loci* approach in favor of the "most significant relationship" approach of the *Restatement (Second) of Conflict of Laws (1971).* 830 S.W.2d 53, 59 (Tenn.1992); *Glennon,* 83 F.3d at 136. Under this new approach,

(1) The rights and liabilities of the parties with respect to an issue in tort are deter-

mined by the local law of the state, which with respect to that issue, has the most significant relationship to the occurrence and the parties. . . .

(2) Contacts to be taken into account . . . to determine the law applicable to an issue include:

 (a) the place where the injury occurred,

 (b) the place where the conduct causing the injury occurred,

 (c) the domicile, residence, nationality, place of incorporation, and place of business of the parties,

 (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Hataway,* 830 S.W.2d at 59 (citing the *Restatement (Second) of Conflict of Laws (1971)* § 145). The location where the injury is suffered is no longer dispositive of the choice of laws issue. *Id.* at 60.

■ In the present case, Georgia law governs. Even though Hari and his motel were physically in Tennessee and his losses occurred there, Georgia has the most significant relationship to the events at issue. At all times, Tucker was located in Georgia. Tucker's relationship with Hari was centered in Georgia since all of their contracts and loan agreements were executed there. Furthermore, all of Hari's causes of action stem from Tucker's alleged actions, omissions, and misrepresentations in the state of Georgia. Finally, Georgia's interest in regulating the financial institutions within its jurisdictions strongly supports the application of Georgia law in this case. *See Thomas v. N.A. Chase Manhattan Bank,* 994 F.2d 236, 242 (5th Cir.1993). Hari's assertion that Tucker reached into Tennessee via the telephone when making the alleged misrepresentations is not sufficient to overcome the substantial contacts between the current tort action and the state of Georgia.

■ Hari's reliance upon the doctrine of *renvoi* to avoid an absurd result is misplaced. This "recognized and accepted tool" is so rare that this Court has located no reported decisions in either Tennessee or Georgia

mentioning "renvoi" nor has counsel cited to any. The few federal cases that have mentioned have not treated the doctrine favorably either. Most just mention the concept in passing. Others reject it entirely.

In *Nailen v. Ford Motor Co.*, 873 F.2d 94 (5th Cir.1989), the Fifth Circuit Court of Appeals addressed a problem created by the differing conflicts rules of Mississippi and Alabama, a problem almost identical to the one created by the conflicts rules of Tennessee and Georgia. That suit was initiated in federal court in Mississippi. Therefore, the conflicts rules of Mississippi were followed. *Id.* at 96. Under those conflicts rules, the substantive law of Alabama governed. *Id.* The court then addressed the applicability of the *renvoi* doctrine. The court wrote:

> Because renvoi is a conflicts doctrine, we look to Mississippi law to determine whether Mississippi recognizes the doctrine. Our research discloses no Mississippi authority which recognized renvoi and none has been cited to us. Most commentators counsel against the adoption of this doctrine for substantially the same reason the district court refused to apply the doctrine: "[w]hat occurs is a never ending circular situation where the issue is forever battered from state to state." ... We find no suggestion in the Mississippi authorities that the Mississippi courts would adopt the renvoi doctrine; ... we decline to take the initiative and adopt it for them.

*Id.* at 96–97 (internal citations omitted). Like the Fifth Circuit in *Nailen,* this Court declines to adopt this disfavored doctrine for the state of Tennessee.

In this case, Hari had the opportunity to choose the forum in which to file suit. He could have filed suit in Georgia where the *lex loci delictus* doctrine is still applied. This would have resulted in the application of Tennessee substantive law. Instead, Hari chose to bring suit in Tennessee where that doctrine has been rejected. Hari must lived with his own choice of forum.

### B. Fraud

▪▪ Hari's first cause of action against Tucker is for fraud. To establish the existence of fraud under Georgia law, the plaintiff must show five elements: a false representation by a defendant of an existing material fact, scienter, an intent to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damage to the plaintiff. *Turnbull v. Northside Hospital, Inc.*, 220 Ga.App. 883, 470 S.E.2d 464, 465 (1996). Ordinarily, questions of fraud are for the jury. *International Telecommunications Exch. v. MCI*, 892 F.Supp. 1520, 1550 (N.D.Ga.1995). But, "where the evidence as a whole excludes every reasonable inference but one," the Court may rule upon the fraud as a matter of law. *Id.* Under this standard, Tucker maintains that it is entitled to summary judgment because Hari has not provided any facts establishing either a false representation or justifiable reliance.

▪ In construing the requirement of a false representation, Georgia courts have found that "[a]ctionable fraud cannot be based upon statements of opinion or promises as to future events unless the allegation is asserted that the promisor made the statement with a present intent not to perform." *Brady v. Dandridge,* 379 S.E.2d 429, 430 (Ga.Ct.App.1989). See also *Smith v. McClung*, 215 Ga.App. 786, 452 S.E.2d 229, 231 (1994) (finding that representations of a future expectation or hope are not actionable fraud). Applying this interpretation to the present case seems to foreclose a cause of action for fraud based upon the alleged actions. Hari's assertion of fraud is based upon the representations allegedly made by Silverman in an effort to get Hari to approve the final disbursement. Although there is some uncertainty concerning the actual content of the statements, Hari was told that, or at least given the impression that, Tucker believed RNBC would use the final disbursement to pay the subcontractors and that Tucker felt secure with bonds provided by Tucker. These statements are, at best, statements by Silverman concerning Tucker's expectations for the future. Therefore, under the *Brady* interpretation, these statements cannot be the basis for a cause of action for fraud.

▪ Even if the Silverman's statements could serve as a basis for fraud, Tuck-

er maintains that Hari could not justifiably rely upon those statements. The Georgia Supreme Court has held that it "will not interfere on behalf of one alleging fraud where it appears that the person relying on the misrepresentation had an equal and ample opportunity to prevent his own injury by due diligence." *Citizens and Southern Nat'l Bank v. Arnold,* 240 Ga. 200, 240 S.E.2d 3, 4 (1977). Therefore, one cannot "blindly rely" upon the representations of another in lieu of conducting an independent investigation. *First Union Nat'l Bank v. Gurley,* 208 Ga. App. 647, 431 S.E.2d 379, 381 (1993). Although the determination of what constitutes reasonable diligence is ordinarily a question for the jury, *Pinkerton and Laws Co. v. Roadway Express, Inc.,* 650 F.Supp. 1138, 1147 (N.D.Ga.1986), the failure to conduct any investigation can establish a lack of due diligence as a matter of law. *First Union Nat'l Bank,* 431 S.E.2d at 381; *Citizens Bank of Ball Ground v. Johnson,* 191 Ga. App. 155, 381 S.E.2d 121, 123–4 (1989). According to the undisputed facts of this case, Hari made no attempt to investigate the validity of the bonds until after the final disbursement was made. Instead, he chose to rely upon the bonds being to Tucker's satisfaction. Absent the existence of a duty entitling Hari to rely upon Tucker's satisfaction, Hari's fraud action against Tucker must fail for the lack of justifiable reliance because of Hari's failure to investigate.

 That leaves one last question: did Hari have a confidential relationship with Tucker that would entitle him to rely upon Tucker's investigation of the bonds? The answer is no. First, because of the opposing interests of a borrower and lender, the relationship between a bank and its customers is not a fiduciary relationship. *Citizens and Southern Nat'l Bank v. Arnold,* 240 Ga. 200, 240 S.E.2d 3, 4 (1977); *First Union Nat'l Bank,* 431 S.E.2d at 381. Furthermore, in the contract, Hari and Tucker expressly agreed that their relationship was that of a debtor and creditor, not a fiduciary one. They also agreed that all conditions and obligations imposed on Tucker were solely for the benefit of Tucker, not Hari. *See Hightower v. Century 21 Farish Realty,* 214 Ga. App. 522, 448 S.E.2d 271, 273 (1994) (finding

that a contract disclaimer provision could prevent a party from justifiably relying upon an alleged negligent misrepresentation of another); *Guernsey Petroleum Corp. v. Data Gen. Corp.,* 183 Ga.App. 790, 359 S.E.2d 920, 922 (1987) (holding that a contract disclaimer provision prevented a plaintiff from showing justifiable reliance upon an alleged fraudulent misrepresentation of the defendant). Therefore, Hari was not entitled to rely solely upon the banks investigation of the bonds, and summary judgment in favor of Tucker is granted on the cause of action for fraud.

## C. Negligent Misrepresentation

 Tucker also argues that it is entitled to summary judgment on Hari's cause of action for negligent misrepresentation. Georgia courts have recognized a cause of action for fraudulent misrepresentation based upon the rule articulated in the *Restatement (Second) of Torts* § 552 (1977). *Robert & Co. Assoc. v. Rhodes–Haverty Partnership,* 250 Ga. 680, 300 S.E.2d 503, 504 (1983).

> Under this standard, one who supplies information during the course of his business, profession, employment, or in any transaction in which he has a pecuniary interest has a duty of reasonable care and competence to parties who rely upon the information in circumstances in which the maker was manifestly aware of the use to which the information to be put and intended that it be so used.

*Id.* "Justifiable reliance is . . . an essential element of a claim asserting negligent misrepresentation." *Real Estate Int'l, Inc. v. Buggay,* 220 Ga.App. 449, 469 S.E.2d 242, 245 (1996). As with a cause of action for fraud, the failure to use reasonable diligence in investigating the representations of another can preclude a finding of justifiable reliance upon those representations. *Id;* *Williams v. Fallaize Ins. Agency,* 220 Ga. App. 411, 469 S.E.2d 752, 754–55 (1996). When a plaintiff has failed to conduct any investigation, and has failed to use due diligence as a matter of law, summary judgment against that plaintiff on a cause of action for

negligent misrepresentation is warranted. *Real Estate Int'l, Inc.*, 469 S.E.2d at 245.

■ In the present case, as more fully set out above in relation to Hari's cause of action for fraud, Hari made no effort to investigate the assertions made by Tucker concerning the validity of the bonds. Furthermore, Hari was not in a fiduciary relationship entitling him to rely upon Tucker's assertions. Therefore, Tucker's motion for summary judgment on the negligent misrepresentation claim is granted since Hari has failed to provide any evidence sufficient to infer justifiable reliance.

### D. Breach of Trust

Hari's final cause of action against Tucker is for breach of trust. Hari maintains that Tucker was acting as a trustee by holding and disbursing the construction loan funds for the benefit of Hari. Therefore, he argues that Tucker breached that trust by distributing the final payment to RNBC because Tucker knew or should have known that RNBC's sworn lien waiver was false. In moving for summary judgment, Tucker maintains that this cause of action must fail because Tucker was not in a fiduciary or confidential relationship with Hari.

■ Under a breach of trust theory, "[o]ne standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." *Restatement (Second) of Torts* § 874. (1979). The first key element of this cause of action is a fiduciary or confidential relationship between the two parties. In the present case, no such relationship exists.

■ Ordinarily, the relationship between a bank and its customers is not a fiduciary one. *Citizens and Southern Nat'l Bank v. Arnold,* 240 Ga. 200, 240 S.E.2d 3, 4 (1977). One Georgia court has been even more explicit by holding that no fiduciary relationship was created between a construction lender and the borrower just because the lender made payments directly to the general contractor. *First Federal Savings Bank v. Fretthold,* 195 Ga.App. 482, 394 S.E.2d 128,

130 (1990). The *First Fed. Sav. Bank* court wrote:

> Given that the lender's primary role is to protect its interest in the secured property, we find no basis for imposing upon the lender the duties of the owner and general contractor to pay for labor and materials supplied to the project. Absent clear evidence that the lender either expressly agreed to undertake this obligation or actively participated in the monitoring of payments made during the construction, the creation of such a burden would discourage construction lending. [The bank's] obligation to exercise diligence and good faith in the disbursement of construction fund to [the general contractor] required that payment be made in a timely manner and for work actually performed, but did not compel [the bank] to undertake the duties of [the borrower and the general contractor], and certainly did not authorize [the borrower] to abdicate [its] responsibility for ensuring payments to subcontractors and suppliers.

*Id.* 394 S.E.2d at 130–31 (citations omitted). Just as in *First Fed. Sav. Bank,* the bank in this case did not undertake a duty to ensure that the subcontractors were paid. In fact, in their contract, the parties agreed that theirs was not a fiduciary relationship. They also agreed that the obligations to keep the property free of any liens and to provide surety bonds satisfactory to Tucker were imposed solely for the benefit of Tucker. Therefore, summary judgment on Hari's cause of action for breach of trust is granted because there is no evidence of the requisite fiduciary or confidential relationship with Tucker.

### III. CONCLUSION

In sum, summary judgment is GRANTED in favor of Tucker on all three causes of action. Hari's causes of action for fraud and negligent misrepresentation fail because the alleged misrepresentations were statements of opinion and there was no evidence to show justifiable reliance. The cause of action for breach of trust also fails because there was

no confidential or fiduciary duty existing between Tucker and Hari.

An appropriate order will enter.

### ORDER

In accordance with the accompanying memorandum, the motion of defendant Tucker Federal Savings and Loan for summary judgment is hereby GRANTED.

It is so ORDERED.