19406, 19407.   JONES *et al. v.* TRI-STATE ELECTRIC
COOPERATIVE; and *vice versa.*

SUBMITTED JUNE 13, 1956—DECIDED SEPTEMBER 7, 1956.

*A. J. Henderson, T. H. Crawford, Marion T. Pope, Jr.,* for plaintiff in error.

*William Butt, Herman J. Spence,* contra.

HEAD, Justice. ■ The trial judge properly construed the "expansion" provision of the contract between the Tennessee Electric Power Company and the Tennessee Valley Authority, entered into on May 12, 1939, (and under which the defendants claim as successors in title), as limited to such "expansion" of the defendants' telephone lines as might be effectuated on existing electric poles of the Authority. The contention of the defendants that the "expansion" provision extended to poles not in existence, and to rights of way not owned or acquired by the Authority at the time of the contract, can not be sustained. The possibility that at some indefinite time in the future the Authority, or its successors in title, might acquire rights of way and might erect poles of a character suitable for the additional use of supporting telephone lines of the defendants is too remote a contingency to be the subject matter of a valid sale. "A bare contingency or possibility may not be the subject of sale." Code § 96-102; *J. S. Noyes & Co.* v. *Jenkins,* 55 *Ga.* 586, 587; *Watson* v. *Adams,* 103 *Ga.* 733, 736 (30 S. E. 577); *Forsyth Manufacturing Co.* v. *Castlen,* 112 *Ga.* 199, 201 (37 S. E. 485, 81 Am. St. R. 28); *Mattox* v. *Deadwyler,* 130 *Ga.* 461, 465 (60 S. E. 1066); *Ryman* v. *Kennedy,* 141 *Ga.* 75, 77 (80 S. E. 551); *Harris* v. *McDonald,* 152 *Ga.* 18, 27 (108 S. E. 448); *McDaniel* v. *Haslett,* 183 *Ga.* 458, 462 (188 S. E. 718); *Yancey* v. *Grafton,* 197 *Ga.* 117, 121 (27 S. E. 2d 857).

■ 'Estoppel by conduct under Code §§ 38-115 and 38-116 was not involved under the pleadings and evidence of the parties. "In order to constitute estoppel by conduct, there must concur, first, a false representation or concealment of facts; second, it must be within the knowledge of the party making the one or concealing the other; third, the person affected thereby must be ignorant of the truth; fourth, the person seeking to influence the conduct of the other must act intentionally for that purpose; and, fifth, persons complaining shall have been induced to act by reason of such conduct of the other." *Tinsley* v. *Rice,* 105 *Ga.* 285, 290 (31 S. E. 174); *Bennett* v. *Davis,* 201 *Ga.* 58, 63 (39 S. E. 2d 3); *Harris* v. *Abney,* 208 *Ga.* 518, 519 (67 S. E. 2d 724). The pleadings and the evidence demanded a finding that the defendants and their immediate predecessor in title, J. C. Thomason, relied upon the "expansion" provision of the contract referred to in the first division of this opinion. No acts of the plaintiff are shown to have induced the defendants, or Thomason, to insist that the "expansion" provision was a valid contract extending to rights of way to be acquired by the plaintiff in the future and to its lines subsequently constructed.

■ Under the "expansion" provisions of the contract between the Tennessee Power Company and the Tennessee Valley Authority, the defendants had neither title nor color of title to the rights of way and lines of the plaintiff acquired subsequently to the execution of the contract. The plaintiff did not seek affirmative equitable relief to establish its title to its properties. " 'The doctrine of stale demands,' or laches as codified in § 3-712, 'is a purely equitable one' and 'is · . . . not applicable to a complaint for the recovery of land.' *City of Barnesville* v. *Stafford,* 161 *Ga.* 592. . . Accordingly, as to the prayer for a recovery of the land, the petition showed no bar by prescriptive title or lapse of time against any plaintiff." *Lathem* v. *Fowler,* 192 *Ga.* 686, 693 (16 S. E. 2d 591). "There is no law in this State which prevents the person holding the legal title to land from suing for and recovering it, as long as the legal title remains in him." *Doris* v. *Story,* 122 *Ga.* 611, 614 (50 S. E. 348); *Fox* v. *Lofton,* 185 *Ga.* 456 (195 S. E. 573); *Fletcher* v. *Fletcher,* 209 *Ga.* 184, 186 (71 S. E. 2d 219).

■ It was not essential that there be any agreement between

the parties to the effect that the validity of the proposed contract between the parties should depend upon approval by the Administrator of the Rural Electrification Administration. The record (independently of the resolution attached to the purported contract) conclusively establishes knowledge on the part of the defendants that the plaintiff was an electric cooperative association, and, as such, was a borrower from the Rural Electrification Administration. Under the law, this knowledge on the part of the defendants is controlling on the rights of the parties in so far as the purported contract is concerned.

The Rural Electrification Administration Act provides in part: "No borrower of funds under sections 904 or 922 of this title shall, without the approval of the Administrator, sell or dispose of its property, rights, or franchises, acquired under the provisions of this chapter, until any loan obtained from the Rural Electrification Administration, including all interest and charges, shall have been repaid." 7 U. S. C. A. 553, § 907.

Under the above provision of the Rural Electrification Act (which is notice to all persons purporting to contract with a borrower from the R. E. A.), no contract affecting the property, rights, or franchises of a borrower from the R. E. A. is valid without consent and approval of the Administrator of the R. E. A. The contention that the plaintiff's evidence tending to show that the contract had not been approved was hearsay and inadmissible, if correct, shows no reversible error. Under the act of Congress creating the R. E. A., the purported contract between the parties was incomplete and inoperative until approved by the Administrator of the R. E. A. The burden of establishing the validity of the purported contract, based upon approval by the Administrator, was upon the defendants, since they were contending that it was, in fact, a completed contract.

█ The time for excepting to the adverse rulings on the plaintiff's special demurrers to the defendants' answer had not expired at the time of the trial. Code (Ann. Supp.) § 6-905; Ga. L. 1946, pp. 726, 738; Ga. L. 1953, Nov.-Dec. Sess., pp. 440, 453. Apparently as a matter of precaution, the plaintiff by cross-bill excepted to the rulings on its special demurrers adverse to it, within the time provided by law. However, upon the trial of the cause, the trial judge, without the entry of any formal order,

in effect modified his rulings on the plaintiff's special demurrers by the admission of certain testimony. The assignment of error that the court's ruling on the plaintiff's special demurrers became "the law of the case" is without merit.

*Judgment affirmed on the main bill of exceptions; cross-bill dismissed. All the Justices concur.*