## A95A0112. KATZ v. HARRIS.
### (457 SE2d 239)

ANDREWS, Judge.

After Ira Katz died intestate on September 16, 1992, Seth Katz, as administrator of the Estate of Ira Katz (the estate), brought suit against William Harris contending: (1) that Harris was holding funds given by Katz to Harris and held by Harris in an implied trust; (2) that Harris was holding personal property jointly purchased by Katz and Harris and held by Harris in an implied trust; (3) that there was a confidential and fiduciary relationship between Katz and Harris such that Harris owed Katz's estate a formal accounting as to such funds and property; (4) that Harris breached his fiduciary duty to the estate by failing to render an accounting and deliver to the estate all funds and property entrusted by Katz to Harris; (5) that Harris converted to his own use property solely owned by Katz, which the estate was entitled to recover; and (6) that the estate was entitled to compensatory and exemplary damages.

The trial court granted Harris' motion for summary judgment, denied the estate's motion for partial summary judgment, and granted Harris' motion for the award of litigation costs and attorney fees pursuant to OCGA § 9-15-14. The estate appeals from these rulings.

1. We agree with the trial court that the record contains no evidence to support the estate's claim that Harris was holding funds or jointly purchased property in a trust, or that the estate was entitled to a court-ordered accounting from Harris on the basis that Harris owed a fiduciary duty to Katz's estate.

By Harris' description, he and Ira Katz "were involved in a monogamous, committed, homosexual relationship during the continuous time period of 1983 until Ira's death on September 16, 1992." The evidence showed that Harris and Katz lived together, had separate incomes, and maintained separate banking accounts. They each contributed money to pay for joint household expenses such as rent, utilities, and food. Typically, Harris would write a check for joint bills from his account, and Katz would reimburse him for a share of the

expenses. They made no attempt to keep a formal accounting of their respective contributions.

On several occasions, Harris and Katz deposited money into Harris' credit union account to save for two vacations they intended to take together. The record shows that these funds were spent on one vacation they took together, and that the remaining funds were used for joint living expenses after the second vacation trip was cancelled. Katz and Harris also jointly contributed about $1,500 each for a $3,000 downpayment on the purchase of a house they intended to buy together. The sales contract on the house was terminated shortly before Katz died, and, when the downpayment was refunded, Harris gave $1,500 to the estate.

As to the financial relationship between Harris and Katz, Harris produced all of his bank and credit union records for inspection by the estate, and he reviewed all of Katz's records provided to him by the estate. There is no evidence that Harris is holding any funds in which the estate has an interest.

Harris and Katz also jointly purchased various household furnishings and furniture. Harris gave the estate a list of these items, an accounting of the shares that he and Katz contributed to the purchase of each item, and provided purchase receipts and estimated fair market values of the items for purposes of dividing the jointly owned property with the estate.[1] There is no evidence that Harris and Katz owned any other jointly purchased property.

Harris provided the estate with complete records to account for his financial relationship with Katz, and provided detailed records accounting for jointly owned property. There is no evidence to support the estate's claim that Harris is holding funds given by Katz to Harris. There is no evidence that Harris has possession of jointly owned property not described by him in the record, nor does the record show that Harris has breached any duty to the estate with respect to such jointly owned property. Accordingly, the trial court correctly granted Harris' motion for summary judgment to the extent it sought a ruling that he had not breached any duty to the estate as to such funds and jointly owned property. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). The trial court also properly granted Harris' motion for summary judgment to the extent it sought a ruling that Harris did not have a fiduciary duty to render a further accounting to the estate, and correctly denied the estate's motion for summary judgment seeking a court-ordered accounting. Based on the record, we find no abuse of discretion on the part of the trial court in refusing to

---

[1] The present action did not seek partition of the jointly owned property, so this issue was not before the court. See OCGA §§ 44-12-1; 44-6-120 et seq.

order Harris to render a further accounting in addition to the detailed records and testimony he provided to the estate. *Stapelton v. Sky Valley, Inc.,* 184 Ga. App. 818 (363 SE2d 48) (1987).[2]

2. As to the estate's claim that Harris converted items of personal property solely owed by Katz at the time of his death, we find an issue of fact remains.[3] The estate contended that there were a few items of personal property solely owned by Katz at the time of his death that were not included in the personal property that was turned over to the estate by Harris. The estate gave Harris a list of this property prior to commencement of the lawsuit and asked for Harris to return the items. When filed, the lawsuit by the estate did not include a conversion count. After the suit was commenced, the estate again communicated that these items of personal property, which belonged solely to Katz, appeared still to be in Harris' possession. A demand was made for the return of the items, along with a statement that a count for conversion would be added to the suit if the items were not returned.

Subsequently, at his deposition, Harris was questioned about the list of jointly owned property he had provided to the estate. He testified that there were no items of jointly owned property not on the list. After discussing the list of jointly owned property, Harris was asked if he had any other personal property in his possession not on the list of jointly owned property in which Katz had an interest. He answered that he had "knowledge of some items that have been addressed by the [estate]," and that he was holding this property until all the issues in the suit were settled. A conversion claim for the return of the items solely owned by Katz was subsequently added to the complaint and included in the pre-trial order.

In addressing the conversion claim on summary judgment, we must construe the evidence in favor of the estate and against Harris. So construed, there was evidence that Harris was in possession of property owned by Katz at the time of his death, to which Katz's estate had a right of immediate possession, and that Harris refused the estate's demand to return the property. "Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion

---

[2] As to appellate jurisdiction of this issue, "the mere fact of a prayer for an accounting does not call into action the equity powers of a court. *Peeples v. Peeples,* 193 Ga. 358 (2) (18 SE2d 629) (1942). There being no showing that a remedy at law would be inadequate if an accounting were had, appellate jurisdiction lies in this court. *Universal Garage Co. v. Fowler,* 184 Ga. 604 (192 SE 299) (1937)." (Citations and punctuation omitted.) *Stapelton,* supra.

[3] The statements of counsel for the estate at the hearing on the motions for summary judgment make clear that the conversion claim related to property solely owned by Katz, and not to jointly owned property.

over it in defiance of the owner's right, or in a manner inconsistent with it. . . . It is immaterial that such dominion was exercised in good faith, for whoever meddles with another's property . . . does so at his peril. . . ." (Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (356 SE2d 877) (1987); see Adams & Adams, Ga. Law of Torts, § 2-7. Although it appears that the property at issue consists of personal items largely of sentimental value, we are, nevertheless, constrained by the record before us to conclude that there was some evidence supporting the estate's claim for conversion. Although the trial court's order on summary judgment does not specifically address the conversion claim, Harris moved for summary judgment on this issue, and the motion was granted. The trial court's order granting summary judgment in favor of Harris erred to the extent it eliminated the estate's conversion claim.

3. The estate contends that the trial court erred by granting attorney fees and litigation costs to Harris under OCGA § 9-15-14. Harris' motion was filed under OCGA § 9-15-14 (e) (effective April 5, 1994), which provides that a motion for attorney fees and expenses may be made "at any time during the course of the action but not later than 45 days after the final disposition of the action." The award, made pursuant to OCGA § 9-15-14 (b), does not state the specific conduct that authorized the award. See *Porter v. Felker*, 261 Ga. 421, 422 (405 SE2d 31) (1991). Accordingly, the award is vacated and the case remanded to the trial court for consideration of the award of attorney fees and expenses in light of the partial reversal of summary judgment in this opinion. Id. at 422; *MacDougald v. Phillips*, 213 Ga. App. 575 (445 SE2d 357) (1994); *Rolleston v. Huie*, 198 Ga. App. 49, 52 (400 SE2d 349) (1990).

*Judgment affirmed in part, reversed in part and remanded. Mc-Murray, P. J., and Blackburn, J., concur.*

DECIDED APRIL 14, 1995.

*Schreeder, Wheeler & Flint, Debra A. Wilson,* for appellant.
*Russell & Herrera, Ann J. Herrera,* for appellee.