A98A2028, A98A2029. HYDE et al. v. GILL; and vice versa.
(513 SE2d 278)

McMURRAY, Presiding Judge.

Hyde Recreation, a partnership composed of William C. Hyde, Gary Hyde and Clint Hyde ("the Partnership"), turned over a pool hall business known as Hyde Recreation ("the business") to Steve Gill on June 14, 1993, under an agreement ("the Option Contract") which provided Gill with a one-year lease and an option to purchase the business by May 15, 1994. The Option Contract lists the business' inventory and equipment and, under its purchase price provision, states that "[t]he business shall include all equipment and inventory referred to herein, the goodwill of the business, and the right to use the name Hyde Recreation, Kendrick's Recreation, or any combination thereof." The Option Contract required Gill to pay an escrow agent $6,000 at the Option Contract's inception plus $600 per month during the agreement's lease term. The Option Contract also required Gill to assume Clint Hyde's $600 per month rental payment obligation under a lease for certain real property ("the business premises") he acquired for the business' operation through July 31, 1995. The provision required Gill to "abide by all terms and conditions of the [business premises] lease during all such times as [Gill] occupies said premises unless [Gill] obtains a modification or new lease agreement with [the landlord of the business premises]." This right to modify the business premises lease was accompanied by a requirement that, "[a]t the termination of [the Option Contract] lease [term, Gill] shall surrender the premises to [the Partnership] in the same condition as at the commencement of [the Option Contract] lease, normal wear and tear excepted."

In August 1993, Gill entered into a $700 per month lease ("the modified lease") with the business premises' landlord providing Gill use and control of the property through July 31, 1995. Sometime later, Steve Gill abandoned the business premises, moved the business' inventory and equipment to another location and began using this new location to operate a pool hall business known as "Stevo's Pool Room."[1]

---

[1] Gill explained this move in his affidavit. He deposed that "after [he] had operated the business for some time, it became apparent to him that the business was not profitable due to several factors, not the least of which included the deteriorated condition of the building

Gill notified the Partnership, via letter dated April 12, 1994, that he did not intend to exercise his option to purchase the business; that he wanted to "get together and talk about arrangements for ending the relationship and returning the property" to the Partnership, and that he was interested in purchasing some of the business' inventory and equipment. Gill thereafter (apparently) honored his monthly rental payment obligation for the business until the Option Contract lease expired on June 13, 1994. But he did not honor his promise to surrender the business "in the same condition as at the commencement of [the Option Contract] lease [term], normal wear and tear excepted." Instead of restoring the business at the business premises, four days after expiration of the Option Contract lease term (June 17, 1994), Gill subleased the business premises to tenants who promised to use the business premises "as a video game room and grill only." Ten days later, via a letter dated June 27, 1994, Gill advised the Partnership that, "[o]n the 30th day subsequent to your failure to pick up [the business' inventory and equipment (which then, apparently, remained at "Stevo's Pool Room"), a] storage . . . rate of $20.00 per day shall be assessed against this property."

The Partnership posted a letter, dated July 26, 1994, notifying Gill of his failure to comply with the Option Contract's requirement for him to surrender the business "in the same condition as at the commencement of [the Option Contract] lease." In this letter, the Partnership suggests that Gill cure this default by purchasing the business as specified in the Option Contract, paying the Partnership $31,800 for the business' assets, restoring the business at the business premises, or surrendering "Stevo's Pool Hall" to the Partnership.

Gill posted a letter to the Partnership, dated August 2, 1994, offering to purchase some of the business' inventory and equipment (at a rate lower than suggested by the Partnership) and informing the Partnership that, if the Partnership does "not accept this proposal, [Gill stands] ready to return the property to [the Partnership] as contemplated in the original agreement [and that his] previous demand for storage charges would still apply in the future."

The Partnership did not respond, and in a letter dated November 1, 1994, Gill directed the Partnership to "pick up" its equipment, pay storage costs, or lease "Stevo's at a negotiated price." When the Partnership did not respond, Gill posted another letter to the Partnership on "June 21, 1995, stating that [the Partnership] could retrieve the property or . . . be subject to risk of any loss as the property could

---

and the fact that the highway in front of the business had been widened by the State and all of the onstreet parking had been eliminated. As the [Option C]ontract did not have any requirement that [he] continuously keep the business open, he chose to close the business and . . . opened a new business under another name at a different location."

not be fully protected." The Partnership did not respond, and on April 2, 1996, Gill "notified the Partnership that the property would be disposed of if not reclaimed within ten (10) days."

On April 10, 1996, plaintiffs Gary Hyde and Clint Hyde, d/b/a Hyde Recreation, brought an action against Gill for breach of contract and conversion of the business' inventory and equipment. Gill denied the material allegations of the complaint and counterclaimed for damages based on plaintiffs' alleged bad faith and stubborn litigiousness. Gill also sought to recover for storing the business' inventory and equipment. The trial court granted Gill's motion for summary judgment as to plaintiffs' breach of contract claim, but denied this motion as to plaintiffs' conversion claim.[2] The trial court denied Gill's motion for summary judgment as to his counterclaim. Plaintiffs appeal in Case No. A98A2028, and Gill cross-appeals in Case No. A98A2029. *Held*:

## Case No. A98A2028

1. Plaintiffs contend the trial court erred in granting Gill's motion for summary judgment, arguing that genuine issues of material fact remain as to their breach of contract claim. We agree.

" 'In order to prevail on a motion for summary judgment (OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. . . . The burden of proof is shifted when the moving party makes a prima facie showing that it is entitled to judgment as a matter of law. At that time the opposing party must come forward with rebuttal evidence or suffer judgment against him.' (Citations and punctuation omitted.) *Collier v. Evans*, 199 Ga. App. 763, 766 (5) (406 SE2d 90) (1991)." *Trust Co. Bank v. Stubbs*, 203 Ga. App. 557, 560 (1) (417 SE2d 373). In the case sub judice, the trial court erred in finding that Gill made a prima facie showing that he is entitled to judgment as a matter of law on the Partnership's breach of contract claim. Gill's own affidavit reveals that he failed to comply with the Option Contract's requirement that Gill, "[a]t the termination of [the Option Contract] lease, . . . surrender the premises to [the Partnership] in the same condition as at the commencement of [the Option Contract] lease, normal wear and tear excepted."[3]

---

[2] Plaintiffs filed an amended complaint seeking damages for "tortious destruction of and interference with their business, business location, equipment and goodwill." This claim was not addressed in the trial court's summary judgment order.

[3] The parties assert opposing arguments regarding the propriety of the trial court's order striking Gary Hyde's affidavit. We do not address this issue because we do not consider Gary Hyde's affidavit in reviewing the cases sub judice.

Gill, nonetheless, contends "[t]he Partnership's failure to accept the tender of the premises and the personal property results in a waiver and estoppel which would prevent it from obtaining damages against Gill as a matter of law." This assertion is not supported by the record.

While there is evidence that Gill asked the Partnership to "pick up" the business' inventory and equipment at the end of the Option Contract lease term, there is no proof that he then offered to surrender the business to the Partnership as he found it at the beginning of the Option Contract, i.e., a pool hall business establishment at the business premises. In fact, the evidence is undisputed that, instead of restoring the business to the Partnership as promised, Gill subleased the business premises four days after expiration of the Option Contract lease term (June 17, 1994) to tenants who promised to operate a business which would not compete with "Stevo's Pool Room." While Gill excuses this conduct by arguing that the landlord of the business premises refused to allow the Partnership to occupy the property after expiration of the Option Contract, any such proof (indicating conduct by the Partnership which may have compromised Gill's ability to fulfill his promise to restore the business) amounting to estoppel or implicit waiver would be a matter for jury resolution. See *Jefferson-Pilot Communications Co. v. Phoenix City Broadcasting &c.*, 205 Ga. App. 57, 62 (2) (421 SE2d 295); *Rowe v. Ben's Truck Stop*, 197 Ga. App. 514, 515 (1) (398 SE2d 760).

Gill next contends the trial court properly granted his motion for summary judgment as to the Partnership's breach of contract claim, arguing that the Partnership did not provide written notice of his alleged breach as required under the Option Contract's provision that, "[i]n the event [Gill] defaults in the payment of any installment of rentals when due, or otherwise breaches this lease, the [Partnership] shall give written notice of such breach to [Gill] and [Gill] shall have an additional 15 days from receipt of notice to cure said breach." This assertion is not supported by the record.

Gill's own evidence shows that the Partnership posted a letter, dated July 26, 1994, notifying Gill of his failure to comply with the Option Contract's provision requiring restoration of the business to the Partnership. Even though this letter provided Gill with several ways to cure this default, it is undisputed that Gill failed to do so within 15 days after receiving this letter.

Gill also contends the trial court properly granted his motion for summary judgment as to plaintiffs' breach of contract claim, arguing that plaintiffs were not the real party in interest to press a claim on behalf of the Partnership. This argument is without merit. "[S]ummary judgment cannot properly be granted to a defendant on the basis of a real party-in-interest objection. See *Walsey v. Lockhart*,

[136 Ga. App. 624, 625 (1) (222 SE2d 141)]." *Warshaw Properties v. Lackey*, 170 Ga. App. 101, 102 (316 SE2d 482). See also *Hodgskin v. Markatron, Inc.*, 185 Ga. App. 750, 751-752 (3) (365 SE2d 494); *Wurlitzer Co. v. Watson*, 207 Ga. App. 161, 164 (1) (427 SE2d 555).

The trial court erred in granting Gill's motion for summary judgment as to the plaintiffs' breach of contract claim.

*Case No. A98A2029*

2. The trial court did not err in denying Gill's motion for summary judgment as to plaintiffs' conversion claim. Proof that Gill lost his right to use or possess the business' inventory and equipment upon expiration of the Option Contract lease term, that Gill kept this equipment at "Stevo's Pool Room" after expiration of the Option Contract lease term, and that he did not return the business' inventory and equipment to the business premises upon expiration of the Option Contract lease term raises genuine issues of material fact as to Gill's liability for conversion. "Conversion involves an 'unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.' *Southern Express Co. v. Sinclair*, 130 Ga. 372, 373 (60 SE 849) (1908)." *King v. Crain-Daly Volkswagen*, 207 Ga. App. 583, 585 (428 SE2d 586). " 'Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion. It is unnecessary to show that the defendant applied it to his own use, if he exercised dominion over it in defiance of the owner's right, or in a manner inconsistent with it. . . . It is immaterial that such dominion was exercised in good faith, for whoever meddles with another's property . . . does so at his peril. . . .' (Citations and punctuation omitted.) *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (356 SE2d 877) (1987); see Adams & Adams, Ga. Law of Torts, § 2-7." *Katz v. Harris*, 217 Ga. App. 287, 289 (2) (457 SE2d 239). Gill's reliance, in the case sub judice, on *Kornegay v. Thompson*, 157 Ga. App. 558, 559-560 (2) (278 SE2d 140), is misplaced in light of proof which would authorize a finding that Gill, without authority, unfairly converted the Partnership's property. See *Lovinger v. Hix Green Buick Co.*, 110 Ga. App. 698, 700 (2) (140 SE2d 83).

Gill argues that the trial court should have granted his motion for summary judgment with regard to plaintiffs' conversion claim based on his laches defense. We do not agree. " 'The doctrine of laches is a purely equitable defense and is not applicable to a complaint for the enforcement of a legal right.' *Stuckey v. Storms*, 265 Ga. 491 (458 SE2d 344) (1995); *Jones v. Tri-State Elec. Coop.*, 212 Ga. 577, 582 (3)

(94 SE2d 497) (1956)." (Footnote omitted.) *Dept. of Human Resources v. Mitchell*, 232 Ga. App. 215, 216-217 (1) (501 SE2d 508).

3. Construing the evidence most strongly in favor of the Partnership, the trial court did not err in denying summary judgment as to Gill's counterclaim for his alleged costs of storing the business' inventory and equipment. *Burnette Ford, Inc. v. Hayes*, 227 Ga. 551, 552 (181 SE2d 866); *Combs v. Adair Mtg. Co.*, 245 Ga. 296 (264 SE2d 226). Evidentiary deficiencies in this regard include lack of proof regarding how long, under what conditions and where Gill allegedly stored the business' inventory and equipment.

The trial court did not err in denying summary judgment as to Gill's claim for attorney fees and expenses of litigation. " '(T)he intent of the law . . . is to leave the matter of expenses . . . to the jury trying the case. (Cit.)' *Brannon Enterprises v. Deaton*, 159 Ga. App. 685, 687 (285 SE2d 58) (1981)." *J. M. Clayton Co. v. Martin*, 177 Ga. App. 228, 232 (6) (339 SE2d 280).

*Judgment affirmed in Case No. A98A2029. Judgment reversed in Case No. A98A2028. Blackburn and Eldridge, JJ., concur.*

DECIDED MARCH 2, 1999.

*Thomas H. Pittman*, for appellants.
*Kunes & Kunes, G. G. Joseph Kunes, Jr.*, for appellee.