## A92A0880. MINER v. HARRISON.
(422 SE2d 899)

SOGNIER, Chief Judge.

Mark Harrison brought suit against David A. Miner III, his uncle, alleging claims for breach of contract and fraud and seeking recovery of attorney fees. A Bryan County jury rendered a verdict for Harrison on both causes of action plus attorney fees, and he elected to have judgment entered on the fraud count. Miner appeals from the denial of his motions for new trial and judgment n.o.v.

In May 1983, appellant, as lessor, and appellee, as lessee, executed a lease for certain property and improvements on which appellee's father had been operating a service station and convenience store and a liquor store. Appellee acquired his father's inventory and equipment and continued the operations of the two businesses, Harrison's Corner and Roland's Package Shop, having procured the requisite business licenses for each one. Two months before the scheduled May 1, 1989 expiration date of the lease, appellant approached appellee about entering into a new lease. Under appellant's proposed terms, the monthly rent would have risen from $900 to $3,500 and the lease would have carried no definite term, instead ending whenever the state Department of Transportation proceeded with its plans to condemn the subject property. Appellee refused to agree to these terms and began arranging to move the liquor store operations to another site and to sell the convenience store inventory at auction. When appellant then expressed interest in purchasing appellee's inventory, the parties engaged counsel to negotiate a sale.

The evidence adduced at trial concerning these negotiations, the scope and effect of agreements reached, and the reason for appellant's failure to complete the sale was extensive and sharply contested. The dispute turned primarily on the question whether the parties had entered into a binding contract for the sale of appellee's business inventory, and if so, whether the beer, wine, and liquor on the premises (the "liquor inventory") were included in the sale. The parties did agree that they initially reached an agreement memorialized in an April 20 letter from Brice Ladson, appellee's counsel, to George Waters, appellant's attorney. The letter, which referenced the "Harrison's Service Center Lease," provided that "[t]he terms of the agreement between the parties are as follows: (1) [Appellant] will purchase all of [appellee's] inventory at his cost at a price to be determined by an independent third party, acceptable to [appellant and appellee]. . . . (2) [Appellant] will purchase [specified] equipment from

[appellee] at a price of $10,000.00 . . . . (4) The inventory and closing of the above sale will take place at [the business premises] on Sunday, April 30, 1989." The letter also provided that Waters would prepare closing documents and forward them to Ladson by April 26. Appellant signed this letter to indicate that he had "read and approved the terms and agreement" stated therein.

The documents subsequently prepared by Waters, which Ladson received on the afternoon of Friday, April 28, defined the inventory to be sold as "all inventory situated on the premises known locally as Harrison's Corner" and provided that closing would occur within three business days of the completion of the inventory. Ladson revised this provision to describe the subject inventory as that of "[appellee's] Convenience Store/Gas Station/Repair Shop business, known locally as Harrison's Corner, . . . consisting of tires, fishing tackle and equipment, supplies, stock, and other merchandise (excluding the merchandise involved in [appellee's] liquor business)." Although Waters learned of this change late that afternoon, the inventory proceeded as planned on Sunday, April 30. Prior to that date, appellee removed the liquor inventory to a newly leased store. The expert selected by the parties valued the convenience store inventory at $22,798. However, the next day appellant announced he did not intend to complete the sale. He first gave as his reason the fact that certain items on the premises were either missing or damaged, but when appellee resolved those issues, appellant then stated that his understanding of the parties' agreement was that the liquor inventory was to be included in the sale. The parties and their counsel met on Thursday, May 4, and appellee offered to return the liquor inventory to the premises and include it in the sale. Appellant rejected this proposal and offered to buy the convenience store inventory for $12,000 instead of the appraised value, but appellee declined, opting to remove the inventory from the premises and sell it at auction. One week later, appellant did purchase the equipment for the agreed price, appellee then surrendered possession of the leased premises, and appellant began operating the two businesses.

1. Seven of appellant's 18 enumerations concern alleged errors in connection with appellee's breach of contract claim and the court's charge thereon. However, the jury's verdict on that claim was never reduced to judgment because appellee elected to have judgment entered on his alternative theory of fraud. See *Hines v. Good Housekeeping Shop*, 161 Ga. App. 318, 321-322 (291 SE2d 238) (1982) (before judgment, plaintiff must elect between affirming the contract and recovering damages for its breach or rescinding the contract and obtaining damages for fraudulent inducement). Since only an entered judgment is appealable, *Sharp v. State*, 183 Ga. App. 641, 642 (360 SE2d 50) (1987); see OCGA §§ 5-6-31, 5-6-38 (a), this court does not

have jurisdiction to consider the enumerations arising from the breach of contract claim. See *Boynton v. Reeves*, 226 Ga. 202 (173 SE2d 702) (1970).

2. We next address appellant's contentions that the trial court erred by denying his motions for directed verdict and judgment n.o.v. on the fraud claim. Although, as appellant maintains, a claim for fraud " 'cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, (the promisor) knows that the future event will not take place.' [Cit.] 'A promise made without a present intent to perform is a misrepresentation of a material fact and is sufficient to support a cause of action for fraud.' [Cit.]" *Rogers v. deMonteguin*, 193 Ga. App. 480, 481-482 (1) (388 SE2d 10) (1989). Thus, the jury's verdict must be affirmed if there is any evidence to support a finding that at the time appellant agreed to buy appellee's inventory, he did not intend to perform. See id. at 482.

Several witnesses testified appellant had been angry with appellee because of his belief that appellee had taken advantage of him during the lease term, and during cross-examination appellant acknowledged harboring hostility toward appellee during the time he proposed new lease terms and before the inventory sale was negotiated. Evidence also was adduced that appellant knew appellee was arranging to move his liquor business to another location before appellant signed the April 20 letter. Given that the April 20 letter referred only to "Harrison's Service Center" and the closing document drafted by appellant's counsel called only for sale of the inventory of "Harrison's Corner"; that appellant did not raise the issue of exclusion of the liquor inventory until after he knew appellee had removed it from the leased premises and the inventory of the remaining items had been completed; that appellant initially gave a different reason for his refusal to perform the contract; that appellant then refused to complete the sale even after appellee offered to include the liquor inventory; and that appellant ultimately proposed to consummate the inventory sale by paying half the price set by the terms of the April 20 letter, the jury was authorized to infer that appellant entered into the April 20 agreement without a present intent to perform. See generally OCGA § 23-2-57 (fraud may be proved by slight circumstantial evidence); *Hayes v. Hallmark Apts.*, 232 Ga. 307, 309 (1) (207 SE2d 197) (1974) (fraud may be established by inference from facts in evidence). Accordingly, the trial court did not err by denying appellant's motions. See *Rogers*, supra; see also *Price v. Mitchell*, 154 Ga. App. 523-524 (1) (268 SE2d 743) (1980).

3. Appellant also contends in three enumerations of error that he was entitled to a directed verdict or judgment n.o.v. or a new trial as to the award of $50,000 in actual damages on the fraud claim because

the award bore no relation to appellee's actual loss and thus was not supported by the evidence. "The measure of damages in an action for fraud and deceit is the actual loss sustained, and if the contract is one of purchase and sale the actual damages are the difference between the value of the thing sold at the time of delivery and what its value would have been if the representations made had been true. [Cit.] . . . This difference in value may be shown by evidence of the reasonable cost of correcting the defect. [Cits.]" *Windsor Forest, Inc. v. Rocker*, 115 Ga. App. 317, 322 (2) (154 SE2d 627) (1967). Although couched in language applicable when the plaintiff was the buyer, this measure of damages also has been applied when the plaintiff was the seller. See *Citizens Bank &c. v. Johnson*, 191 Ga. App. 155, 158 (2) (381 SE2d 121) (1989).

At trial, appellee adduced evidence to show that pursuant to the procedure set forth in the April 20 letter for calculation of the value of the inventory, a value of $22,798 was established; that once appellant refused to purchase the inventory at that price appellee moved the inventory to another location, incurring expenses of $3,261 in connection with the move; and that appellee then sold a portion of the inventory for $8,493. We disagree with appellant's contention that *no* evidence of the actual loss was established, compare *Citizens Bank*, supra, as this evidence would have authorized a finding of an actual loss of $17,566 (the amount appellee would have received for the inventory under the contract less the amount actually received plus the amount expended to complete the alternative sale). See *Windsor Forest*, supra; see also *Barnette v. Peace*, 196 Ga. App. 440, 441 (395 SE2d 916) (1990) (fraud damages may include expenses incurred as a result of the fraud). However, we do agree with appellant that the amount awarded by the jury far exceeded the actual loss proved at trial and thus bore no rational relationship to the injury. See *Chrysler Credit Corp. v. Brown*, 198 Ga. App. 653, 657 (3) (402 SE2d 753) (1991); *Simmons v. Weber*, 197 Ga. App. 457, 458 (2) (398 SE2d 795) (1990). Since the evidence did authorize an award for appellee in some amount, the proper remedy would have been to deny appellant's motion for judgment n.o.v. but grant his motion for new trial on the issue of damages. *Simmons*, supra. Accordingly, the judgment of $50,000 in "actual damages" is vacated and this action is remanded for a new trial limited to the issue of damages due appellee on his fraud claim.

4. Appellant's contention that the trial court's charge on fraud was incomplete is without merit. Considered as a whole, *Chesser v. Wallace*, 200 Ga. App. 567, 568 (2) (408 SE2d 814) (1991), the charge did state the essential elements of an action for fraud as set forth in the case appellant cites, *C. P. D. Chem. Co. v. Nat. Car Rental*, 148 Ga. App. 756, 758-759 (2) (252 SE2d 665) (1979). Further, since we

held in Division 2 that the evidence was sufficient to sustain a jury verdict for appellee on his fraud claim, the evidence likewise was sufficient to authorize a jury charge on fraud.

5. In three enumerations of error appellant challenges the entry of judgment against him for $13,500 in attorney fees, contending appellee failed to establish by competent evidence the value of his counsel's services. At trial, Ladson, who represented appellee during the contract negotiations and the early stages of the litigation, testified that he had reviewed trial counsel's file and statement for work rendered and opined that the work performed was reasonable and necessary for the case and that trial counsel's bill of $26,972 constituted a reasonable charge for those services. Trial counsel stated in his place, without objection from appellant, that the statement Ladson reviewed in his testimony was trial counsel's bill for services rendered to appellee.

This testimony was sufficient to establish the actual costs of appellee's trial counsel and the reasonableness of those costs. See *Georgia Bldg. Svcs. v. Perry*, 193 Ga. App. 288, 299-300 (387 SE2d 898) (1989) (statements of counsel in their place, if not objected to, constitute evidence); *Hayes Constr. Co. v. Thompson*, 184 Ga. App. 482, 484 (2) (361 SE2d 865) (1987) (reasonableness of fees may be shown through testimony of another attorney who examined file). To the extent that *Brunswick Floors v. Shuman*, 185 Ga. App. 362, 363 (1) (364 SE2d 96) (1987), cited by appellant, suggests a contrary result, that case constitutes physical precedent rather than binding precedent, only four of the nine judges of this court having concurred fully in the majority opinion. Court of Appeals Rule 35 (b).

*Judgment affirmed in part and vacated and case remanded in part. McMurray, P. J., and Cooper, J., concur.*

DECIDED SEPTEMBER 9, 1992 —
RECONSIDERATION DENIED SEPTEMBER 23, 1992 —

*Richard Phillips*, for appellant.
*Howard & Racz, Wayne S. Racz*, for appellee.