A93A0792. BUILDING MATERIALS WHOLESALE, INC.
v. REEVES.
A93A0793. REEVES v. PARKS.
(433 SE2d 346)

BLACKBURN, Judge.

In February 1988, William Parks and William Reeves established a building supplies business, Building Materials Wholesale, Inc. (BMW). Prior to that, both had been employed at an Owens Corning facility in Albany, Georgia, with Parks serving as the facility's manager and Reeves as an administrative supervisor. In setting up BMW, Parks and Reeves each invested $25,000 in the initial capitalization. Parks was designated as president of the corporation in charge of outside sales, and Reeves was vice president in charge of various administrative matters of the business.

Parks and Reeves eventually executed a shareholders' agreement governing their relationship, containing a buy/sell clause that required written notice and afforded either shareholder the opportunity to buy or sell at the same price offered by the other shareholder. In August 1990, pursuant to that agreement, Parks orally informed Reeves that he wanted to buy out Reeves's interest or be bought out by Reeves, and offered $25,000 for Reeves's stock along with $10,500 as an employment termination fee. Reeves initially agreed to this offer, but later changed his mind and proposed instead to sell 40 percent of his BMW stock for $5,000 and remain at BMW as an employee under contract. Ultimately, Reeves offered to sell all his stock for $20,000, payment of $10,000 for a covenant not to compete, and a

written employment contract for a three-year term. Parks agreed to these terms, and the agreement was executed.

The employment contract provided that BMW could terminate Reeves's employment if he was guilty of misconduct or gross negligence in carrying out his duties or BMW's business; if he failed or refused to carry out his duties or assignments; or if he wilfully breached any of the conditions in the employment agreement. Two pertinent conditions in the agreement consisted of the prohibition against charging anything of a personal nature to BMW's open accounts, and keeping his personal telephone calls to an absolute minimum during work hours.

In September 1990, Reeves made over 40 personal, long distance telephone calls on BMW's telephone account during company time, and in October 1990 he charged over 36 such calls to BMW's account. The company's telephone bill dated November 10, 1990, reflected total long distance charges of $229.79, $57.45 of which were charges generated by Reeves's personal calls. In a meeting on November 19, 1990, Parks demanded that Reeves discontinue such personal use of the company telephone line. (At trial, Reeves testified that he offered to pay for the personal charges at that time, but Parks had stated that such reimbursement was unnecessary.)

Reeves, however, continued to make personal, long distance charges on the company telephone. A compilation of BMW's telephone bills during Reeves's employment reflected 19 long distance personal calls charged to BMW's account in December 1990, and 23 such calls in January 1991. During his entire period of employment, Reeves made a total of 271 personal, long distance calls, 226 of which were charged to BMW's account. On February 1, 1991, Reeves left a Friday afternoon office meeting to make a 44-minute personal telephone call, after which he left the premises to go home. The following Monday, Parks terminated Reeves's employment.

Reeves subsequently commenced this action alleging fraud against Parks, and breach of contract against BMW. During the trial, the trial court directed a verdict in favor of Parks on Reeves's claim that Parks had fraudulently induced him to sell his stock and enter the employment contract. However, the trial court denied BMW's motion for directed verdict on Reeves's claims for breach of contract and for expenses of litigation based upon bad faith.

The jury ultimately returned a verdict for Reeves in the amount of $30,000 on the breach of contract claim and $10,000 for expenses of litigation. BMW appeals from the judgment entered on that jury verdict, and Reeves cross-appeals from the trial court's direction of a verdict for Parks on the fraud claim.

1. BMW contends that the trial court erred in failing to direct a verdict in its favor on Reeves's claims for breach of contract and ex-

penses of litigation, because Reeves's repeated violations of certain terms of his employment contract prohibiting charging personal items to the company's accounts and keeping his personal telephone calls to an absolute minimum authorized termination of his employment. In response, Reeves emphasizes that Parks declined his offer to reimburse the company for the long distance charges; that because his work hours extended from 7:00 a.m. to 5:00 p.m., it was reasonably expected that some personal phone calls were allowed; and that he attempted to compensate for taking up company time by not taking lunch or by working late.

"Our general rule with respect to compliance with contract terms is not strict compliance, but substantial compliance. [OCGA § 13-4-20]; [Cit.] 'At common law a strict and literal performance of the terms of the contract was required; but by rules of equity, either adopted by statute or recognized by the courts, a substantial compliance with the terms of the contract is sufficient . . .' [Cit.]" *Dennard v. Freeport Minerals Co.*, 250 Ga. 330, 332 (297 SE2d 222) (1982).

In the instant case, Parks testified that his primary complaint was not the amount of the telephone charges involved, but rather the time away from the business while Reeves engaged in his personal calls. It was undisputed that Reeves persisted in making personal, long distance telephone calls charged to the company account, but there was evidence that he attempted to compensate for the company expense and time by offering to pay for the charges and working late. Although the evidence in this case certainly would have supported a jury verdict in favor of BMW on the breach of contract claim asserted by Reeves, we are unable to conclude that no issue of fact existed as to whether Reeves substantially complied with the subject conditions of the employment contract. Accordingly, the trial court did not err in denying BMW's motion for directed verdict on this claim.

With regard to Reeves's claim for expenses of litigation based upon bad faith breach of contract, we note that " '[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement.' [Cit.]" *Brack v. Brownlee*, 246 Ga. 818, 820 (273 SE2d 390) (1980). Bad faith in the performance of a contract can be sufficient to sustain an award of attorney fees. *McDonald v. Winn*, 194 Ga. App. 459 (390 SE2d 890) (1990).

In this case, Reeves testified that when he asked Parks why Parks wanted him to leave the company, Parks never specified any reason. At trial, Parks refused to acknowledge that Reeves's employment had been unilaterally terminated; rather, he maintained that he and Reeves had reached a mutual agreement that it was to the best interest of both parties that Reeves leave the company. However, an entry in Parks's business diary for February 4, 1991, indicated "Decision on Will: Terminate Will's employment with BMW." The fact

that Reeves's violations of the terms of his employment contract occurred over such an extended period of time with Parks's knowledge could either support a finding that Parks's termination of Reeves's employment did not take place earlier due to Parks's patience, or that Reeves's conduct, tolerated by Parks for so long, did not really provide the basis for Parks's termination of Reeves's employment. Under these circumstances, the trial court properly allowed the jury to resolve the issue.

2. BMW also contends that the trial court erred in denying its motion for new trial on the grounds that the verdict is contrary to the law and strongly against the weight of the evidence. However, "[w]here a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence. [Cits.]" *Taylor v. Ga. Power Co.,* 136 Ga. App. 412, 413 (221 SE2d 222) (1975). There is some evidence to support the jury's verdict in the instant case, and thus we will not disturb the trial court's denial of BMW's motion for new trial based on the general grounds.

3. After close of the evidence in the case, an attorney who was a member of the law firm representing Reeves had a brief conversation with one of the jurors in the case. This attorney had been active in pretrial matters, but did not participate in the trial of the case, and had not entered the courtroom with Reeves's trial counsel. In response to BMW's motion for mistrial based on this contact, the trial court immediately questioned both the attorney and the juror.

This inquiry established that the attorney and the juror had known each other for several years, and that the attorney had provided legal services to the juror and her family business. This relationship was fully disclosed during voir dire. Both the attorney and the juror indicated that the conversation consisted only of small talk asking how each other was, without any reference to the case at trial, and the juror stated that nothing in the nature of this brief contact would influence her decision in the case. After this inquiry, the trial court offered to excuse the juror and proceed with a jury of 11, but BMW declined the option. The trial court then denied the motion for mistrial.

" 'Ordinarily motions for (new trial) because of improper conduct of jurors or parties are addressed to the sound discretion of the trial judge. (Cit.) Unless there is an abuse of discretion, the appellate court will not upset the trial judge's determination. (Cits.)' [Cit.]" *Wright v. Satilla Rural Electric Cooperative,* 179 Ga. App. 230, 231 (345 SE2d 892) (1986). In the instant case, " '[t]he evidence . . . affirmatively reveals that the [attorney] and the juror did not converse concerning the case or in reference to any matter that could have affected a fair

trial of the same.' " *Glennville Wood Preserving Co. v. Riddlespur*, 156 Ga. App. 578, 581 (276 SE2d 248) (1980). The trial court did not abuse its discretion in denying the motion for mistrial.

4. In his cross-appeal, Reeves contends that the trial court erred in directing a verdict on his fraud claim asserted against Parks. The basis for his claim of fraud essentially was that Parks wanted control of the business, and set about to achieve such by exercising the buy/sell clause in the shareholders' agreement and executing an employment contract with Reeves with the intention of discharging Reeves later.

However, as pointed out by Parks, Reeves could have exercised his option to buy out Parks's interest in the company, but chose not to do so, in part because of the specter of personal liability for $500,000 in corporate debt. Further, it was Reeves who proposed the employment contract as a condition to selling his stock to Parks.

At trial, Parks acknowledged that he had been dissatisfied with Reeves's work performance prior to the stock sale and execution of the employment contract. Reeves argues that he was unaware of any prior dissatisfaction and that Parks's failure to advise him of such before execution of the employment contract was an indication of Parks's fraudulent intent. However, contrary to Reeves's assertion that he had no indication of any prior dissatisfaction felt by Parks, a letter from the company attorney to the parties (and signed by both parties) on the day of the sale and execution of the employment contract remarked: "On the one hand I regret that the current arrangement has not worked to your total satisfaction, but on the other hand I am glad that you can resolve your differences and continue to work together."

Reeves emphasizes that fraud may be proved by slight circumstantial evidence, or may be established by inference from facts in evidence. *Miner v. Harrison*, 205 Ga. App. 523, 525 (2) (422 SE2d 899) (1992). Nevertheless, we agree with the trial court that there was no evidence supporting a finding of fraud in this case, and direction of a verdict on that issue was proper.

*Judgment affirmed. Johnson and Smith, JJ., concur.*

DECIDED JUNE 17, 1993 —
RECONSIDERATION DENIED JULY 8, 1993 —

*Watson, Spence, Lowe & Chambless, W. Earl McCall, Evans J. Plowden, Jr., Dawn G. Benson,* for Building Materials Wholesale, Inc. & Parks.

*Hodges, Erwin, Hedrick & Kraselsky, William A. Erwin,* for

Reeves.