## A97A1104, A97A1105. MTW INVESTMENT COMPANY et al. v. ALCOVY PROPERTIES, INC.; and vice versa.
(491 SE2d 460)

BLACKBURN, Judge.

Following our decision in *Alcovy Properties v. MTW Investment Co.*, 212 Ga. App. 102 (441 SE2d 288) (1994), the trial court allowed Alcovy Properties, Inc. to assert a claim for abusive litigation against MTW Investment Company and its partners, Victor Maslia, Lee N. Terry, and Larry D. Wolfe (collectively MTW).[1] The jury awarded Alcovy $405,045, but the trial judge reduced the award by $214,500 as a condition of its denial of MTW's motion for a new trial. Alcovy accepted the reduction, subject to its right to appeal the reduction if MTW appealed the verdict. MTW filed this appeal, claiming the trial court committed numerous errors in allowing evidence and in denying MTW's motions for new trial and for judgment n.o.v. Alcovy cross-appealed, claiming the trial court erred in reducing the amount of the jury's award.

1. (a) MTW contends that the court erred in allowing evidence of Alcovy's alleged lost profits, as such profits were too speculative and conjectural to allow recovery. For the reasons discussed below, we agree.

The relevant facts are as follows. MTW was a limited partner of Regency Forest Association, which owned a tract of land in Newton County, Georgia. In 1983, Regency sold the land to Alcovy, which

---

[1] Maslia is now deceased and is represented in this appeal by the executrix of his estate.

immediately resold a portion of the land to another party. Alcovy retained approximately 275 acres. On September 28, 1983, Alcovy granted a 40-day option to Newton County to purchase this property as a landfill site, although this option was not exercised.

Upon learning of the sale of the property, MTW filed suit against Alcovy and others, claiming that Regency did not have authority to sell the land without its permission. MTW also filed a lis pendens against the property in Newton County. Alcovy was served with the lawsuit and lis pendens on September 30, 1983, two days after it had granted the option to Newton County. The defendants filed several counterclaims.

In May 1985, Newton County petitioned to condemn the property. A special master awarded the condemnees $214,500, and this award was confirmed and the property condemned by the superior court on August 5, 1985.

The trial court ultimately granted summary judgment to the defendants on MTW's claims and was affirmed by the Supreme Court without opinion on October 27, 1986. On April 25, 1988, Alcovy requested permission to file a counterclaim against MTW for abusive litigation under *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414) (1986). On May 1, 1989, the trial court dismissed all of the defendants' pending counterclaims, without ruling on Alcovy's request for permission to file a *Yost* claim. Alcovy's *Yost* motion was not ruled on until August 25, 1994, at which time the trial court granted the motion. The court's ruling followed this Court's decision on February 16, 1994, reversing the trial court's dismissal of another defendant's *Yost* counterclaim. See *Alcovy*, supra at 103-104 (3). In that opinion, we noted that the trial court had not ruled on Alcovy's motion to add a *Yost* counterclaim, and that we thus could not review the court's failure to grant such motion. Id. at 103 (2).

At the trial of the *Yost* claim, Alcovy argued that, if MTW had not filed a lis pendens, it would have subdivided the property and sold it for a substantial profit prior to condemnation by the county. MTW contends that evidence of such profits was too speculative to allow recovery.

In order to recover lost profits in a tort action, such profits must "be shown with reasonable certainty. The profits recoverable in such cases are limited to probable, as distinguished from possible benefits. . . . Profits which are remote, or speculative, contingent or uncertain are not recoverable." (Punctuation omitted.) *Ga. Grain Growers Assn. v. Craven*, 95 Ga. App. 741, 747 (98 SE2d 633) (1957). "Loss of prospective profits is ordinarily too remote for recovery. The profits of a commercial business are dependent on so many hazards and chances, that unless the anticipated profits are capable of ascertainment, and the loss of them traceable directly to the defendant's

wrongful act, they are too speculative to afford a basis for the computation of damages. The general rule is that the expected profits of a commercial business are too uncertain, speculative, and remote to permit a recovery for their loss." (Citation and punctuation omitted.) Id.

Alcovy's president, John Roberts, testified that, at the time he purchased the property, he intended to subdivide it into smaller lots, ranging from two to eighteen acres, and sell such tracts to individual purchasers. He did not testify that he had developed any specific plans for subdividing the property. Other than contracting with a heavy equipment company to clean up portions of the property along the road frontage, he did not demonstrate that he had taken any other concrete steps toward realization of his subdivision plans, such as developing a subdivision plat. He testified that, in his opinion, it would have taken approximately one year to sell off all the tracts, so the sales would have been completed before the county condemned the property. However, he also admitted that, prior to service of MTW's lawsuit and the lis pendens, he granted Newton County a 40-day option to purchase the property for use as a landfill. The county did not exercise its option but petitioned to condemn the property in May 1985.

Alcovy also presented expert testimony from an appraiser regarding the market value of the property. The appraiser testified that he was retained by Alcovy in October 1994, and that Alcovy provided him with a subdivision plan and requested that he provide a market value for the proposed subdivision. He did not know when the subdivision plan had been prepared or whether Alcovy had taken any action to actually create a subdivision. The appraiser testified that, in his opinion, the gross sales price of the tracts in the proposed subdivision in 1983 would have been $793,000. He also testified that, in his opinion, it would have taken one year to sell the tracts.

Under these circumstances, the evidence regarding lost profits was too speculative to allow recovery. Although Roberts stated that he intended to subdivide the property and sell it in tracts, he took no concrete steps to effectuate this design during the two years between the time he purchased the property and the time it was condemned by the county. Indeed, he was aware of the county's desire to purchase or condemn the property for a landfill and granted the county an option to purchase the property. Alcovy presented no evidence that there were prospective purchasers who would have purchased the tracts prior to condemnation by the county. Accordingly, the trial court erred in allowing evidence regarding the alleged lost

profits from the suggested subdivision.[2] As it is apparent that the jury's award of damages included amounts for lost profits, we cannot say that such error was harmless. Accordingly, the judgment below is vacated, and this action is remanded for a new trial on Alcovy's abusive litigation claim.

(b) MTW contends that Alcovy could have sought to recover its alleged lost profits in the condemnation proceeding, and that it was therefore collaterally estopped from seeking to recover such profits in the *Yost* action. Although we have already ruled that the judgment must be vacated because the evidence of lost profits was speculative, we have considered MTW's collateral estoppel argument and find it to be without merit.

"For collateral estoppel to apply, a party must have had full opportunity to litigate the issue in question during the prior action. Collateral estoppel will not bar consideration of an issue that has not actually been decided." (Citation and punctuation omitted.) *Toporek v. Zepp*, 224 Ga. App. 26, 28 (1) (479 SE2d 759) (1996).

As a preliminary matter, we note that MTW failed to assert the collateral estoppel defense at trial, or even in its original motion for new trial or for judgment n.o.v. It first raised the issue in a supplemental post-trial brief, in response to a letter from the trial court directing the parties to submit briefs on the issue. Pretermitting the issue of whether MTW waived the defense by failing to raise it at trial, collateral estoppel does not apply in this case because the lost profits sought by Alcovy were not recoverable in the condemnation action. In condemnation cases, "the only question for decision is the value of property taken or consequential damages *at the time of taking*. . . . The land's *present* enhanced value based on its potential as residential development property [is] admissible, not its future retail 'net' price as if it were already developed and were being sold on the market." (Punctuation omitted; emphasis in original.) *Dept. of Transp. v. Benton*, supra at 222. "Consequential damages are recoverable in condemnation to compensate the property owner for loss incurred to the remainder of the property as a direct result of the taking." *Colonial Pipeline Co. v. Williams*, 206 Ga. App. 303, 304 (425

---

[2] Although not directly on point, the analysis applied in condemnation cases supports the decision in this case. For example, in *Dept. of Transp. v. Benton*, 214 Ga. App. 221 (447 SE2d 159) (1994), the condemnee offered testimony as to the value of unimproved property if it were subdivided. However, because the issue in a condemnation case is the value of the property at the time of the taking, we held that it was error to allow expert testimony as to value "based upon [the expert's] assumption of the value as if the property had already been subdivided." Id. at 222 (1). In the present case, Alcovy is not seeking damages based upon a hypothetical future development of the property; rather, it is arguing that, but for the lis pendens, it would have reaped its profits *before* the land was condemned. Nevertheless, although not directly applicable, *Benton* and other condemnation cases illustrate the difficulty in proving damages based upon speculative development of unimproved property.

SE2d 380) (1992).

In the condemnation case, therefore, Alcovy was entitled to recover the value of the condemned land in its then-undeveloped state. Although the *potential* for development could have been considered as a factor affecting the land's value on the date of taking, Alcovy could not have recovered damages based on the value of the land as if it had already been developed. Thus, it could not have recovered in the condemnation case the profits it would have received if it had been able to develop and sell the property prior to condemnation, which is what it was seeking in the *Yost* action.

Since the issue in the condemnation case was not the same as that in the present case, MTW's collateral estoppel argument is without merit.[3] As we have discussed above, however, the evidence of lost profits was too speculative to allow recovery.

(c) MTW also contends that, because evidence of lost profits was too speculative to be admissible, the court erred in denying its motion for judgment n.o.v.

"The standard of appellate review for the denial of a motion for judgment n.o.v. is the 'any evidence test.' Under this test, the determinative question is not whether the verdict and the judgment of the trial court were merely authorized, but is whether a contrary judgment was demanded. If any evidence, viewed in the light most favorable to the victor, supported the jury's verdict, denial of the motion is not error." (Citations and punctuation omitted.) *Signsation, Inc. v. Harper*, 218 Ga. App. 141, 142-143 (2) (460 SE2d 854) (1995).

MTW does not contest the jury's finding that it committed abusive litigation, but argues that it was entitled to a judgment n.o.v. because Alcovy did not present evidence of any recoverable special damages. However, "even if there was insufficient evidence of special damages, the defendants would not have been entitled to judgment." *Miller & Meier & Assoc. v. Diedrich*, 174 Ga. App. 249, 257 (6) (329 SE2d 918) (1985), rev'd in part on other grounds, *Diedrich v. Miller & Meier & Assoc.*, 254 Ga. 734 (334 SE2d 308) (1985). In addition to special damages, *Yost* expressly authorizes a jury to award "nominal damages pursuant to OCGA § 51-12-4." *Yost*, supra at 95 (10). The court charged the jury, without objection, that it could award such nominal damages.[4]

---

[3] This does not mean, however, that the condemnation award has no effect whatsoever in this case. The fact that Alcovy has already received $214,500 for the property in the condemnation case must be considered in determining the amount of Alcovy's damages, since Alcovy would not have received such award if it had sold the property as it contends it would have. We cannot tell from the verdict form whether the jury took the award into consideration in rendering its verdict.

[4] We note that while punitive damages may ordinarily be recovered on a claim for slander of title, Alcovy's slander of title claim was dismissed by the trial court, which dismissal

"Nominal damages constitute a species of general damages. General damages are those which the law *presumes* to flow from a tortious act and may be awarded without proof of any specific amount to compensate the claimant for the injury done him. The law *infers* some damage from the invasion of a property right and if no evidence is given of any particular amount of loss, declares the right by awarding what it terms nominal damages. Thus, a plaintiff's right to recover nominal damages depends *only* upon whether the defendant's liability has been established." (Citations and punctuation omitted; emphasis in original.) *Ackley v. Strickland*, 173 Ga. App. 784, 786 (328 SE2d 549) (1985) (physical precedent only); see also *Avery v. K.I., Ltd.*, 158 Ga. App. 640, 641 (281 SE2d 366) (1981).

In this case, although it is apparent that the jury awarded amounts for lost profits, the verdict form does not reflect precisely how the jury calculated the damages. While the jury would have been authorized to award at least nominal damages, we must remand for a new trial as the verdict form does not specify the claims on which an award was made. Under these circumstances, MTW was not entitled to a directed verdict or judgment n.o.v. See *Avery*, supra; *Cole v. Klassic Kuts & Kurls*, 169 Ga. App. 54 (311 SE2d 847) (1983) (physical precedent only) (error to grant directed verdict against plaintiff due to speculative nature of lost income, where plaintiff entitled to at least nominal damages); *Daughtrey v. C & D Sportswear Corp.*, 239 Ga. 482 (238 SE2d 37) (1977) (error to direct verdict on damages where plaintiff entitled to nominal damages); see also *Miner v. Harrison*, 205 Ga. App. 523, 526 (3) (422 SE2d 899) (1992).

2. MTW contends that the court erred in submitting the issue of attorney fees to the jury. For the reasons discussed below, we agree.

Attorney fees are not directly recoverable as an element of damages in a *Yost* counterclaim. See *Yost*, supra at 95. Rather, *Yost* contemplated that attorney fees would be awarded by the trial judge pursuant to OCGA § 9-15-14. Id.; see also *Porter v. Buckeye Cellulose Corp.*, 189 Ga. App. 818, 823 (5) (377 SE2d 901) (1989) (physical precedent only) (attorney fees not awardable under *Yost*).

*Yost* did recognize, however, that in addition to OCGA § 9-15-14, attorney fees could also be awarded under other "existing principles of law." *Yost*, supra at 96 (17). Alcovy contends that it is entitled to recover attorney fees under OCGA § 13-6-11, which allows a jury to award litigation expenses to a plaintiff "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the

---

was affirmed by this Court in our previous opinion. *Alcovy*, supra at 103 (1). Therefore, the sole issue remaining in the present case was Alcovy's *Yost* claim. In a *Yost* claim, "punitive damages are excluded, as the tort itself is designed as a deterrent." (Punctuation omitted.) *Alcovy*, supra at 104 (4).

plaintiff unnecessary trouble and expense." Alcovy relies on *Vogtle v. Coleman*, 259 Ga. 115, 119 (3) (376 SE2d 861) (1989), where the Supreme Court held that "the *Yost* plaintiff may seek OCGA § 13-6-11 damages for bringing his independent *Yost* counterclaim. Once other damages are shown, attorney fees and expenses of litigation may be awarded under 'existing principles of law' under OCGA § 13-6-11."[5] (Footnote omitted.)

However, the issue of whether Alcovy was entitled to attorney fees under OCGA § 13-6-11 was never presented to the jury in this case. Alcovy did not request, and the court did not give, a charge on such statute or on the elements of recovery set forth therein. Accordingly, the jury was not authorized to award attorney fees under such statute, and the court erred in submitting the issue of attorney fees to the jury.

3. MTW contends the trial court erred in failing to grant its motion for judgment n.o.v., because Alcovy was judicially estopped from bringing this action due to its failure to disclose this claim in its pending bankruptcy proceeding. See, e.g., *Southmark Corp. v. Trotter, Smith &c.*, 212 Ga. App. 454 (442 SE2d 265) (1994).

This contention is without merit, as the record discloses that Alcovy was not in fact involved in a pending bankruptcy action. Rather, it appears that Alcovy's president, John Roberts, was the debtor in the bankruptcy proceeding. Although MTW claims that Alcovy is merely Roberts' alter ego, the only support for this contention is an uncertified copy of an order of the United States Tax Court attached as an exhibit to MTW's brief in support of its motion for judgment n.o.v., finding that Roberts used Alcovy funds for his personal benefit. The trial court did not err in denying MTW's motion on the basis of such evidence. See *Drummond v. Fulton County DFACS*, 237 Ga. 449, 454 (1) (228 SE2d 839) (1976) (collateral estoppel "must be properly proved by placing the entire certified record of the previous case in evidence").

4. In light of our above holdings, it is not necessary to address MTW's remaining contentions or Alcovy's contention that the court erred in reducing the amount of the jury's verdict.

5. As we have reversed the trial court, we deny Alcovy's motion for frivolous appeal damages under OCGA § 5-6-6 and its motion to remand this case to the trial court for an award of additional attorney fees.

---

[5] We note that, in our earlier opinion in this case, we affirmed the trial court's dismissal of Alcovy's previous counterclaim for attorney fees under OCGA § 13-6-11 because, at that time, Alcovy did not have a viable independent counterclaim. *Alcovy*, supra at 104 (5). However, Alcovy was subsequently allowed to file its *Yost* counterclaim and request for OCGA § 13-6-11 expenses. As noted by the Supreme Court in *Vogtle*, a "*Yost* plaintiff may seek OCGA § 13-6-11 damages for bringing his independent *Yost* counterclaim." *Vogtle*, supra at 119 (3).

*Judgments reversed and remanded. Pope, P. J., and Johnson, J., concur.*

DECIDED AUGUST 22, 1997.

*Glass, McCullough, Sherrill & Harrold, Geoffrey H. Cederholm, Alston & Bird, G. Conley Ingram,* for appellants.
*Kerry S. Doolittle,* for appellee.