### A99A0646. WEAVER v. NORTH GEORGIA REGIONAL EDUCATIONAL SERVICE AGENCY.
#### (517 SE2d 794)

JOHNSON, Chief Judge.

Linda R. Weaver sued North Georgia Regional Educational Service Agency ("RESA") in superior court asserting a claim under OCGA § 45-1-4, the whistleblower statute, after the Executive Director of RESA terminated her employment. The trial court granted summary judgment in favor of RESA, and Weaver appeals. For the following reasons, we reverse.

The evidence construed in a light most favorable to Weaver is as follows: Weaver worked for RESA for approximately 15 years. At the time of her termination, she was RESA's Dissemination Coordinator for the Vocational Educational Curriculum Center. In this capacity, she was responsible for receiving orders for and distributing curriculum materials. In September 1994, Weaver went to the Center's copying room to copy materials needed to fill an order. She found one of the Center employees using the copier. The employee had been using the machine for several hours. When Weaver told the employee that she needed to use the copier, the employee said that he was making copies for the Executive Director, Charles Gibson. Weaver asked what the employee was copying, and the employee said that he did not ask questions. Weaver then asked who was going to be billed for the copies, and the employee again said that he did not ask ques-

tions. Weaver went to discuss the matter with Gibson, but he was not in his office.

That afternoon, Gibson called Weaver into his office. Weaver's immediate supervisor, John Vail, was present. Gibson said he had been told that Weaver was accusing him of having materials copied for his personal use. Weaver denied this. Weaver explained that she had asked what the copies were for and the employee said that he did not ask questions. Gibson asked Weaver twice why she thought the copying was for his personal use, but she evaded his question. Weaver said she was evasive because she wanted to be nice and was afraid that Gibson would fire her.

Later that afternoon, Weaver decided to explain the situation to Vail. After admitting that she had been evasive in answering Gibson, Weaver told Vail why she thought the copying was personal work. During this conversation, she also told Vail that on previous occasions, Gibson asked employees to take care of personal matters for him. Vail replied that even if Gibson was having personal copying done, he was sure the RESA Board of Control would approve it. Vail also told Weaver that if she believed something needed to be done about the situation, she should do whatever she thought necessary. Weaver did not subsequently discuss this matter with any other RESA supervisor or member of the Board of Control.

A few days later, Weaver teased a RESA secretary about unrelated matters. The next morning, the secretary was still upset and left work crying. The following day, Gibson asked for Weaver's resignation, and when she refused to give it, he terminated her employment with RESA. The RESA Board of Control subsequently ratified Gibson's action.

1. The trial court granted summary judgment to RESA on the grounds, inter alia, that it was not a state agency within the meaning of the whistleblower statute and therefore was not a public employer under OCGA § 45-1-4 (a) (2). Weaver asserts the trial court erred in granting summary judgment to RESA on this ground, because RESA is a public employer subject to OCGA § 45-1-4.

(a) *What constitutes a public employer*: On its face, OCGA § 45-1-4 applies only where a public employee makes a complaint or provides information to his or her public employer "concerning the possible existence of any activity constituting fraud, waste, and abuse in or relating to any state programs and operations under the jurisdiction of such public employer." OCGA § 45-1-4 (b). The statute provides:

> "Public employer" means the executive branch of the state and any other department, board, bureau, commission, authority, or other agency of the state which employs or

appoints a public employee or public employees except the office of the Governor, the judicial branch, or the legislative branch.

OCGA § 45-1-4 (a) (2). A "public employee," under the statute is any person who is employed by a public employer. See OCGA § 45-1-4 (a) (1).

Regional educational service agencies, established pursuant to OCGA § 20-2-272, are local units of administration to implement a quality basic education curriculum in public schools state-wide and establish and maintain state-wide standards which ensure that each student has access to a quality program. OCGA §§ 20-2-131 (1) & (4); 20-2-242; see generally State Board of Education Regulation 160-5-2-.05 (2) (a). Although RESA does not have state-wide jurisdiction, it is part of a state-wide network created to improve the effectiveness of educational programs and services to local schools. OCGA § 20-2-270 (a). It directly implements state educational programs within its administrative area of responsibility, and it obtains a substantial part of its operational funds from the state. See, e.g., OCGA § 20-2-274; State Board of Education Regulation 160-5-1-.13 (2) (g) 1. As RESA has responsibility for administering state educational programs and dispensing certain state funds within a local area of jurisdiction, it appears to be a hybrid agency.

RESA contends that to qualify as a state agency and thus be a "public employer," under OCGA § 45-1-4 (a) (2), it must have state-wide jurisdiction over some state program or operation. We are not persuaded by this argument. One of the legislative purposes of the whistleblower statute is to prevent retaliatory action against a public employee who makes a complaint or provides information regarding those activities defined in OCGA § 45-1-4 (b). By enacting OCGA § 45-1-4, the legislature intended "to regulate the receiving and investigating of complaints or information from public employees concerning fraud, waste, and abuse in or relating to any state programs or operations" and "to prohibit retaliatory action" against public employees who report or provide information concerning such activities. Ga. L. 1993, p. 563. To effectively accomplish its regulatory purpose, OCGA § 45-1-4 has to apply to a broad group of state programs. We conclude that OCGA § 45-1-4 applies to any state programs or operations, including those state programs over which an agency has administrative jurisdiction that is less than state-wide in its scope. Where, as here, the language of a statute is plain and does not lead to absurd or impractical consequences, the court simply construes the statute according to its terms. See *McDaniel v. Elliott*, 269 Ga. 262, 264 (1) (497 SE2d 786) (1998). The trial court erred in finding that RESA was not a "public employer" under OCGA § 45-1-4.

(b) *Report of waste, fraud, and abuse*: RESA contends that even if it could be considered a public employer, the trial court correctly granted summary judgment because Weaver did not make a report or give information regarding any activity constituting waste, fraud, and abuse. See OCGA § 45-1-4 (b). We disagree.

By deposition, Weaver testified that she told Vail why she thought it was Gibson's personal work that was copied. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. *Moore v. Goldome Credit Corp.*, 187 Ga. App. 594, 595-596 (370 SE2d 843) (1988). Construing the evidence and all inferences most favorably to Weaver, we find that she did make a complaint or provide information to Vail, within the meaning of the whistleblower statute, as to the possible existence of an activity constituting fraud, waste, and abuse. See OCGA § 45-1-4 (b). Although the evidence is in conflict, there exists some circumstantial evidence that Weaver was terminated because of the information which related to the copying incident.

RESA argues, however, that in order to file a complaint or provide information to her public employer, Weaver had to file a complaint with or provide information to the RESA Board of Control. The provisions of OCGA § 45-1-4 do not support such a narrow interpretation. In many cases, it would render the protection of the whistleblower statute meaningless to require a public employee to make a complaint or give information about suspected fraud, waste, and abuse to a supervisory entity or person operating at a managerial level several echelons above that of the employee. "[W]e cannot endorse a statutory interpretation that renders a statute meaningless." *Crossroads Bank &c. v. Corim, Inc.*, 262 Ga. 364, 366 (418 SE2d 601) (1992). Neither can we adopt a statutory construction that will defeat one of the primary purposes of the legislation. See *Tuten v. City of Brunswick*, 262 Ga. 399, 404 (7) (a) (ii) (418 SE2d 367) (1992).

In his deposition, Vail testified that he was head of the Curriculum Center, managed its budget within policy constraints, and supervised and evaluated its staff. In this capacity, Vail supervised and evaluated Weaver. We find that because Vail could officially evaluate Curriculum Center employees and thus take or recommend adverse personnel action against them, he was operating at that level of management authorized to receive potential fraud, waste, and abuse complaints and information on behalf of RESA. See OCGA § 45-1-4 (b) & (d). While we recognize this holding may place a heavy burden on certain supervisors, it is necessary to effectively accomplish the purpose underlying the whistleblower statute.

2. Weaver contends the trial court erred in granting summary

judgment to RESA on the grounds that she was precluded from successfully pursuing her claim by the doctrine of collateral estoppel. For the following reasons, we agree.

Weaver originally sued RESA in superior court asserting a claim under OCGA § 45-1-4. While suit was pending, she also filed suit in federal district court against RESA and Gibson asserting a violation of her First Amendment rights and a claim under OCGA § 45-1-4. She then voluntarily dismissed her suit in superior court. The district court granted summary judgment in favor of RESA and Gibson as to the First Amendment claim and declined to exercise supplemental jurisdiction over Weaver's state claim under the whistleblower statute. Weaver appealed to the Eleventh Circuit Court of Appeals. While her appeal was pending, Weaver filed her current suit in superior court; this suit was stayed pending resolution of her federal appeal. The Eleventh Circuit affirmed the district court's grant of summary judgment, and the present litigation continued.

As to the First Amendment claim, the district court concluded that Weaver's speech on the occasions at issue was not a matter of public concern and thus was not constitutionally protected. In support of this holding, the district court found, inter alia, that Weaver did not make any formal complaint to her superiors, including any member of RESA's Board of Control, and she never expressed that she was exposing waste or fraud in any of the conversations at issue. The district court also concluded, as an alternative ground, that Weaver's evidence failed "to create a genuine issue of material fact as to whether her expression was a substantial factor in the decision to terminate her." The Eleventh Circuit Court of Appeals affirmed, concluding only that "Weaver's speech did not address matters of public concern and was therefore, not protected by the first amendment."

(a) *Collateral estoppel regarding district court's determination as to whether Weaver's expression was a substantial factor in the decision to terminate her*: We will not apply the doctrine of collateral estoppel to this alternative holding, as the Eleventh Circuit Court of Appeals affirmed the district court only as to its primary holding that Weaver's speech did not address matters of public concern and thus was not constitutionally protected. In the case of *Humana, Inc. v. Davis*, 261 Ga. 514, 515 (1) (407 SE2d 725) (1991), the Supreme Court held that:

> if a trial court bases its judgment on alternative grounds, and an appellate court affirms the judgment on only one of the grounds, the ground omitted from decision is not considered to have been finally adjudicated and is not conclusively established for purposes of res judicata.

We find this principle is equally applicable to cases involving collateral estoppel because "collateral estoppel attaches only when an issue actually has been litigated and decided, or when an issue necessarily had to be decided in order for the previous judgment to have been rendered." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 867 (2) (463 SE2d 5) (1995); see Restatement, 2d, Judgments § 27, Comment O (1982).

(b) *Collateral estoppel regarding the Eleventh Circuit and the District Court's determination that Weaver's speech did not address matters of public concern*: We find that these determinations did not result in collateral estoppel in this case.

First, the district court expressly declined to exercise jurisdiction over Weaver's state whistleblower claim. By this declination, the district court inherently determined not to adjudicate issues relative to the disposition of the state claim.

Second, the district court's First Amendment determination did not include a final adjudication regarding whether Weaver's statements to her immediate employer failed to relate to the possible existence of any activity constituting an "abuse in or relating to any state programs and operations." OCGA § 45-1-4 (b). Although the district court made a finding in support of its determination that Weaver had "never expressed" that she was exposing "fraud or waste," this finding does not address the issue of whether she had filed a complaint or provided information to her immediate supervisor regarding an *abuse* relating to a state program or operation. Rather, the district court focused on whether Weaver had made a formal complaint of "waste or fraud" and did not determine whether Weaver had provided information concerning "the possible existence of any activity constituting fraud, waste, and abuse." OCGA § 45-1-4 (b). Collateral estoppel does not bar consideration of an issue that has not been actually decided. See *MTW Investment Co. v. Alcovy Properties*, 228 Ga. App. 206, 209 (1) (b) (491 SE2d 460) (1997); *Toporek v. Zepp*, 224 Ga. App. 26, 28 (1) (479 SE2d 759) (1996). The case of *Langton v. Dept. of Corrections*, 220 Ga. App. 445, 446 (1) (469 SE2d 509) (1996) is distinguishable because, unlike this case, the issue in *Langton* had been fully litigated.

Third, because the holding of the federal district court if applied to OCGA § 45-1-4 would greatly reduce the scope of protection provided to public employees by that statute and could potentially reduce the reporting of fraud, waste and abuse by public employees, the consideration of the issues in this case would not be precluded by the doctrine of collateral estoppel. This is particularly true as most of the issues raised under OCGA § 45-1-4 pertain to questions of first impression. Parties are not precluded from relitigating issues in subsequent actions between the parties when there is a clear and con-

vincing need for a new determination of the issue because of the potential adverse impact of the determination on the public interest. Restatement, 2d, Judgments, supra at § 28 (5) (a).

Because the trial court erred by concluding that RESA was not a public employer within the meaning of OCGA § 45-1-4 (a) and that Weaver was precluded from pursuing her whistleblower claim by the doctrine of collateral estoppel, we reverse.

*Judgment reversed. Andrews and Ruffin, JJ., concur.*

DECIDED MAY 12, 1999 — CERT. APPLIED FOR.

*E. Wycliffe Orr*, for appellant.
*Harben & Hartley, Phillip L. Hartley*, for appellee.